## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:**<br><br>*State Attorneys General Litigation* | **HON. CYNTHIA M. RUFE**<br><br>**Civil Action No.**<br>**17-3768** |

### DEFENDANT ASCEND LABORATORIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT <u>FOR FAILURE TO STATE A CLAIM</u>

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

      a.    12(b)(6) Legal Standard ............................................................................. 2

III.  SUMMARY OF FACTUAL ALLEGATIONS REGARDING ASCEND ............ 2

IV.   ASCEND'S ROLE REGARDING NIMODIPINE .............................................. 3

V.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT AS TO
      ASCEND BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM ...................... 5

      a.    Plaintiffs Fail to State a Horizontal Conspiracy Claim in Count Two ................. 5

            i.     Plaintiffs Have Not Sufficiently Alleged an Agreement with
                   Heritage ............................................................................................ 5

            ii.    A Price-Fixing or Market Allocation Agreement Is
                   Implausible ....................................................................................... 9

            iii.   Plaintiffs Failed to Sufficiently Allege Any "Plus Factor" ..................... 11

      b.    Plaintiffs Fail to Plead an Overarching Conspiracy as to Ascend ....................... 12

      c.    The State Law Claims Should be Dismissed ........................................................ 14

VI.   CONCLUSION ................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bell Atl. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................... passim

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006) ................................................................................................6

*Burtch v. Milberg Factors, Inc.,*
    662 F.3d 212 (3d Cir. 2011) ................................................................................................5

*Butts v. Ramsey,*
    No. CIV.A. 13-3374, 2014 WL 736584 (E.D. Pa. Feb. 25, 2014) ...........................................6

*Copperweld Corp. v. Indep. Tube Corp.,*
    467 U.S. 752 (1984) ...........................................................................................................8

*Cosmetic Gallery, Inc. v. Schoeneman Corp.,*
    495 F.3d 46 (3d Cir. 2007) ................................................................................................14

*Edgar v. Avaya, Inc.,*
    503 F.3d 340 (3d Cir. 2007) ................................................................................................4

*Gewirtz v. Opko Health, Inc.,*
    230 F. Supp. 3d 440 (E.D. Pa. 2017) (Rufe, J.) ................................................................15

*Hanover Ins. Co. v. Ryan,*
    619 F. Supp. 2d 127 (E.D. Pa. 2007) .................................................................................4

*Howard Hess Dental Lab. Inc. v. Dentsply Int'l, Inc.,*
    602 F.3d 237 (3d Cir. 2010) ................................................................................................8

*In re Auto. Parts Antitrust Litig.,*
    2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) ...................................................................12

*In re Chocolate Confectionary Antitrust Litig.,*
    801 F.3d 383 (3d Cir. 2015) .......................................................................................9, 10, 11

*In re Epogen & Aranesp Off–Label Mktg. & Sales Practices Litig.,*
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) ..............................................................................4

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010) ..............................................................................................14

*In re: London Silver Fixing Ltd.*,
  2018 WL 3585277 (S.D.N.Y. July 25, 2018) ........................................................12

*In re: McCormick & Co., Inc.*,
  217 F. Supp. 3d 124 (D.D.C. 2016) ....................................................................11

*In re Mushroom Direct Purchaser Antitrust Litig.*,
  514 F. Supp. 2d 683 (E.D. Pa. 2007) ....................................................................4

*In re Packaged Seafood Products Antitrust Litig.*,
  2017 WL 35571 (S.D. Cal. Jan. 3, 2017)..............................................................12

*In re Processed Egg Prod. Antitrust Litig.*,
  881 F.3d 262 (3d Cir. 2018)................................................................................12

*In re Suboxone Antitrust Litig.*,
  2017 WL 4642285 (E.D. Pa. Oct. 17, 2017)........................................................15

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) ..............................................................................15

*Jordan v. Staffing Plus, Inc.*,
  2018 WL 3046612 (E.D. Pa. June 20, 2018) (Rufe, J.) ..........................................2

*Kelsey K. v. NFL Enterprises, LLC*,
  254 F. Supp. 3d 1140 (N.D. Cal. 2017) ................................................................6

*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)...............................................................................2, 3, 10

*McClean v. Delaware County Hous. Auth.*,
  220 F. Supp. 3d 607 (E.D. Pa. 2016) (Rufe, J.) ..................................................15

*McDermott v. Clondalkin Group, Inc.*,
  649 Fed. Appx. 263 (3d Cir. 2016)........................................................................7

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
  998 F.2d 1224 ......................................................................................................7

*SigmaPharm, Inc. v. Mutual Pharm. Co., Inc.*,
  772 F. Supp. 2d 660 (E.D. Pa. 2011) (Rufe, J.) ..................................................12

*Simcic v. Pittsburgh Water & Sewer Auth.*,
  605 F. App'x 88 (3d Cir. 2015) ..........................................................................15

*State Farm Mut. Auto. Ins. Co. v. Ficchi*,
  2012 WL 1578247 (E.D. Pa. May 4, 2012) ..........................................................6

iv

*Superior Offshore Int'l, Inc. v. Bristow Group Inc.*,
    738 F. Supp. 2d 505 (D. Del. 2010)..................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................4

*U.S. ex rel. Knisely v. Cintas Corp., Inc.*,
    298 F.R.D. 229 (E.D. Pa. 2014)....................................................................6

*United States v. Chandler*,
    388 F.3d 796 (11th Cir. 2004) .....................................................................13

*United States v. Kelly*,
    892 F.2d 255 (3d Cir. 1989).........................................................................13

*United States v. Kemp*,
    500 F.3d 257 (3d Cir. 2007).........................................................................13

*Wright v. Lehigh Valley Hosp. & Health Network*,
    2011 WL 2550361 (E.D. Pa. June 23, 2011) ................................................6

**FEDERAL STATUTES**

28 U.S.C. § 1367(c)(3)....................................................................................15

**RULES**

Fed. R. Civ. P. 21 .............................................................................................5

Fed. R. Civ. P., Rules and Commentary Rule 21.............................................5

Fed. R. Evid. 201 .............................................................................................4

Rule 12(b)(6).....................................................................................................2

**OTHER AUTHORITIES**

5C Wright & Miller, Federal Practice & Procedure § 1363 (3d ed. 2004)......................................4

## I.  INTRODUCTION

Simply put, Ascend Laboratories LLC ("Ascend") should never have been brought into this lawsuit.  In their alacrity to attempt to demonstrate rampant collusion involving the entire generic drug industry, Plaintiffs have dragged Ascend—a small company with a product sold in very limited numbers—into this lengthy and costly litigation despite this critical fact, entirely absent from the Amended Complaint: Ascend could ***not*** have fixed prices or allocated market share for the drug at issue (Nimodipine), as alleged, because Ascend ***did not market this drug, nor sell it to the market.***  In fact, the product ***was marketed and sold exclusively by an independent company***, American Health Packaging ("AHP").  Thus, the foundation of Plaintiffs' claim against Ascend rests on a falsehood, and should be dismissed on those grounds alone.

More specifically, Plaintiffs make three fundamental, but false, assertions[1]:

1. **Allegation:** "By May 1, 2015, Ascend had fully launched Nimodipine." (CAC ¶ 146)

   **In fact:** Ascend <u>never</u> launched Nimodipine, and never sold it to Plaintiffs (or Kroger). Ascend was merely a contract manufacturer for AHP, an independent company, which exclusively marketed and sold it. Ascend did not market the product, nor did it have any connection to setting prices or allocating customers, which were entirely the decisions of AHP, a critical—indeed, dispositive—fact entirely omitted from the Amended Complaint.

2. **Allegation:** "Ascend's WAC price, per tablet, was even higher than Heritage's." (*Id.* ¶ 146.)

   **In fact:** Ascend did not have a WAC (Wholesale Acquisition Cost) price in 2015—or ever—because it did not sell Nimodipine to wholesalers.

3. **Allegation:** "Ascend began to gain market share throughout the second half of 2015." (*Id.* ¶ 147.)

   **In fact:** Ascend did not have ***any*** market share because it never marketed Nimodipine; it was merely a contract manufacturer. Market share was entirely in the purview of AHP only.

Stated differently, the crux of the claim against Ascend—that it fixed the price or allocated the market for Nimodipine—is not only untrue (and not sufficiently pled), it is impossible.

---

[1] As discussed in Section IV, the Court can take judicial notice of certain facts for purpose of this motion.

Moreover, the Complaint should be dismissed with prejudice because Plaintiffs fail to sufficiently plead the required agreement, a plausible conspiracy, or an antitrust injury.

## II.     LEGAL STANDARD

### a.     12(b)(6) Legal Standard

A complaint fails to state a claim under Rule 12(b)(6) unless it contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* "Something more than a mere *possibility* of a claim must be alleged." *Jordan v. Staffing Plus, Inc.*, 2018 WL 3046612, at *1 (E.D. Pa. June 20, 2018) (Rufe, J.). The court should not accept unreasonable inferences or unwarranted deductions of fact. *See id.* at *1 (Rufe, J.) ("Courts are not, however, bound to accept as true legal conclusions couched as factual allegations."). "Conduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## III.    SUMMARY OF FACTUAL ALLEGATIONS REGARDING ASCEND

The mere 22 paragraphs mentioning Ascend in the 877-paragraph, 190-page Amended Complaint allege: In April 2014, Ascend, a generic drug manufacturer, received FDA approval for Nimodipine, "a calcium channel blocking agent used to reduce problems caused by a bleeding blood vessel in the brain." (CAC ¶¶ 115, 135.) After, on April 8, 2014, Jason Malek, a VP at Heritage Pharmaceuticals ("Heritage"), told his company's employees to ███████████ ████████████████████ (*Id.*) In an internal conference call on April 22, 2018, Heritage identified Nimodipine as one of 18 drugs it designated for a price increase. (*Id.* ¶ 136.) "Later in the day . . . . Malek called ███, [████████████████████], and the two spoke for nineteen (19) minutes." (*Id.* ¶ 138.) "***Upon information and belief***, during this conversation they agreed on a plan where

Heritage would raise its prices, Ascend would enter the market at a high price to avoid erosion, and in exchange Heritage would walk away from certain accounts that Ascend had targeted so that Ascend could gain market share at favorable pricing." (*Id.*) (emphasis added). On May 9, 2014, Heritage internally discussed raising the price for Nimodipine and "identified specific customers that it would ██████" to Ascend. (*Id.* ¶ 139.) Malek "planned to offer Ascend" one-third market share "so that Ascend would not compete with Heritage on price." (*Id.* ¶ 136.) At the end of June, Heritage "implemented the price increase." (*Id.* ¶ 141.)

Malek reached out to ████ via email on June 6, October 29, November 4, November 18, and November 25, 2014 asking to ████████████. (*Id.* ¶¶ 140-44.) They had a ten-minute phone call on October 29, 2014, the contents of which are not alleged. (*Id.* ¶ 142.) There is no allegation that they spoke again after October 2014. In January 2015, Malek learned that Ascend had Nimodipine in its warehouse. (*Id.* ¶ 145.) "By May 1, 2015, Ascend had fully launched Nimodipine," allegedly with a higher WAC price than Heritage's, and "began to gain market share throughout the second half of 2015." (*Id.* ¶¶ 146-47.)

## IV. ASCEND'S ROLE REGARDING NIMODIPINE

Plaintiffs' allegations—and their case against Ascend—are based on a false representation that Ascend marketed and sold Nimodipine. However, Ascend ***never sold Nimodipine to the wholesalers, retailers, or customers*** and Ascend ***had no control over the price at which Nimodipine was sold to the market***. Nor did Ascend make pricing or marketing decisions, which were entirely and exclusively the province of AHP, and which is entirely absent from the Amended Complaint. In fact, on April 7, 2014, the same day that Ascend received FDA approval for Nimodipine (and ***before*** any of the allegedly conspiratorial communications with Heritage), Ascend contacted AHP to inquire if it would be interested in licensing the product.

3

In January 2015, after securing a manufacturing source and completing negotiations with AHP, Ascend licensed and then sold Nimodipine **in bulk** to AHP.   AHP was responsible exclusively for the packaging, distribution, price-setting, selection of customers, and marketing of Nimodipine, and sold the drug under its own trade dress.   (*See* Ex. 1 at 10, 12, AHP Label, to W. Gordon Dobie's Declaration, ¶ 3 (hereinafter "Dobie Decl.") filed concurrently herewith).[2] Ascend was a mere contract manufacturer.   IMS Data, the industry standard for pharmaceutical sales, lists **AHP and not Ascend** among companies that sold Nimodipine from 2011 to the present. (*See* Dobie Decl. ¶ 4, Ex. 2, IMS data.)   Therefore, Plaintiffs' allegations that Ascend "launched" Nimodipine or "gained market share" in 2015 are simply false.[3]   (CAC ¶¶ 146-47.)   Incredibly, the true facts are not contained in the Amended Complaint, which relies on false allegations to give the appearance of a conspiracy in restraint of trade.

Plaintiffs further base their price-fixing claim against Ascend on a high "wholesale acquisition cost" (a "WAC" price) from Ascend in May 2015.   (CAC ¶ 146.)   However, Ascend did **not** even have a WAC price in May 2015 because it was only selling Nimodipine to AHP, not to wholesalers.   In fact, publicly available Medi-Span data shows that Ascend did not have a WAC price in 2015, **or ever**.   (*See* Dobie Decl. ¶ 5, Ex. 3, Medi-Span data.)   Thus, this allegation, like

---

[2] The Court can consider these facts because the documents are matters of public record, the facts can be judicially noticed as they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and/or the facts are integral to Plaintiffs' claims.  *See* Fed. R. Evid. 201; *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) (stating that "courts ordinarily examine . . . matters of which [they] may take judicial notice" as part of a 12(b)(6) motion to dismiss); *In re Mushroom Direct Purchaser Antitrust Litig.*, 514 F. Supp. 2d 683, 691–92 (E.D. Pa. 2007) (recognizing that documents that are "integral to" the claim may be considered); *see also In re Epogen & Aranesp Off–Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1286 (C.D. Cal. 2008) (taking judicial notice of drug labels publicly available on FDA website for motion to dismiss).

[3] The Court also should not accept as true Plaintiffs' allegations that are contradicted by facts that can be judicially noticed.  *See Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007) (taking judicial notice of public information, on a motion to dismiss, clearly contradicting plaintiff's claims); *see also Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 133 (E.D. Pa. 2007) (not crediting allegations that contradicted matters subject to judicial notice); *see also* 5C Wright & Miller, Federal Practice & Procedure § 1363 (3d ed. 2004) ("The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed.").

the others attributing marketing and pricing to Ascend, is simply false.

In sum, Ascend is an improper defendant, which warrants dismissal.[4]

## V.      THE COURT SHOULD DISMISS THE AMENDED COMPLAINT AS TO ASCEND BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM

### a.      Plaintiffs Fail to State a Horizontal Conspiracy Claim in Count Two

Even putting aside the false allegations, Plaintiffs' claim against Ascend fails for the following reasons: (1) they have not sufficiently alleged an agreement; (2) the alleged conspiracy is not plausible; (3) they failed to allege any "plus factor," and (4) there is no antitrust injury.[5] Therefore, the Court should dismiss Count Two to avoid burdening Ascend with the "potentially enormous expense of discovery" when there is "no reasonably founded hope that the discovery process will reveal relevant evidence to support a Section 1 claim." *Twombly*, 550 U.S. at 559.

#### i.  Plaintiffs Have Not Sufficiently Alleged an Agreement with Heritage

A Section 1 claim requires an ***agreement***. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) ("Section 1 claims always require the existence of an agreement."). Yet, Plaintiffs failed to assert factual allegations showing any meeting of the minds between Ascend and Heritage. Instead, the few allegations against Ascend are conclusory and speculative—a far cry from what *Twombly* and progeny require. And, as detailed below, the Court cannot credit Plaintiffs' ***only*** allegation of an agreement because it was pled on "information and belief" even though Malek—one of the two alleged participants in the agreement—is a cooperating witness.

---

[4] Alternatively, the Court should dismiss Ascend from the case because it was misjoined, is differently situated than other Defendants as a mere contract manufacturer, and/or the relief Plaintiffs seek cannot be obtained from Ascend as Ascend does not sell Nimodipine to the market. *See* Fed. R. Civ. P. 21; *see also* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 21 (Rule 21 may be used to "drop a defendant against whom no relief is sought."). And, while, in certain circumstances, a Section 1 claim could potentially be asserted based on collusion between ***potential*** competitors, Plaintiffs have not asserted any such theory in the Amended Complaint.
[5] Plaintiffs only allege that Ascend was involved with the sale of **one** of the 15 drugs in the Amended Complaint— Nimodipine. Ascend does not have FDA approval for and has never manufactured any of the other 14 drugs.

## 1.      The Single Allegation of an Agreement Cannot Be Credited

The only allegation containing a purported agreement between Heritage and Ascend is a bald conclusion that Malek and ███ "agreed on a plan" during a 19-minute phone call on April 22, 2014, pled only on "information and belief"—just like the allegation found insufficient by the Supreme Court in *Twombly*.[6] (*See* CAC ¶ 138.)  Tellingly, Plaintiffs fail to include any facts of the contents of this purported call despite the fact that Malek—one of the two purported participants— "has cooperated and has agreed to continue to cooperate fully with the ongoing Attorneys General's Investigation."  (*See* Dobie Decl. ¶ 6, Ex. 4, Settlement Agreement, at 2[7].)  Among other things, Malek agreed to produce documents and evidence, provide facts, and answer questions from the signatory-Attorneys General.  (*See id.* at 3.)  Thus, Plaintiffs would possess statements or records from Malek regarding what, if anything, was said to establish an agreement on this call. *See, e.g., Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017) ("one would expect at least some evidentiary facts to have been located and pled" based on the nature of the case, such as a "confidential witness" to provide the "details . . . regarding some actual conspiratorial meeting, communication, or agreement").  Given that no such details were included, this allegation is insufficient.  *See Wright v. Lehigh Valley Hosp. & Health Network*, 2011 WL 2550361, at *3 (E.D. Pa. June 23, 2011) ("Reliance … on information and belief cannot transform legal conclusions into plausible factual allegations."); *State Farm Mut. Auto. Ins. Co. v. Ficchi*, 2012 WL 1578247, at *5 (E.D. Pa. May 4, 2012) ("Allegations based upon information and belief are permissible, but only if the pleading sets forth specific facts upon which the belief is reasonably

---

[6] The Supreme Court dismissed the claim as insufficient where "Plaintiffs allege[d] upon information and belief that [alleged co-conspirators] have entered into a contract, combination or conspiracy." *Twombly*, 550 U.S at 552.
[7] *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that a court may consider items subject to judicial notice at the motion to dismiss stage); *see also Butts v. Ramsey*, No. CIV.A. 13-3374, 2014 WL 736584, at *3 (E.D. Pa. Feb. 25, 2014) ("The Court may take judicial notice of [the] settlement agreement, which is a matter of public record").

based."); *U.S. ex rel. Knisely v. Cintas Corp., Inc.*, 298 F.R.D. 229, 241 (E.D. Pa. 2014) ("cursory allegations, made on information and belief alone, are unquestionably insufficient to open the door to broad and burdensome discovery"). Furthermore, the Court should not even consider this "information and belief" allegation because it was improper given that Malek is a ***cooperating witness for the Plaintiffs***, and such pleading is only "permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x. 263, 267–68 (3d Cir. 2016) ("[s]everal Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession.").[8]

### 2.    Plaintiffs Pled No <u>Conspiratorial</u> Communications

Beyond the improper "information and belief" allegation, Plaintiffs merely allege brief, sporadic, innocuous messages, *e.g.*, to "███████ "███████," or find a "███████ ███████" (CAC ¶¶ 140, 142-43.) Such communications—even between competitors—do not plead a conspiratorial agreement. *See, e.g., Superior Offshore Int'l, Inc. v. Bristow Group Inc.*, 738 F. Supp. 2d 505, 516 (D. Del. 2010) ("The Third Circuit has clearly ruled that communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise."); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 and 1242 n.15 (3d Cir. 1993) (social calls and telephone contacts among the defendants' representatives insufficient to exclude the possibility that defendants acted independently).

Moreover, even taken collectively, Plaintiffs' allegations only amount to the following:

- an <u>**internal**</u> discussion <u>**at Heritage**</u> in April 2014 allegedly identifying Nimodipine as one

---

[8] The idea that Malek and Ascend's ███████ sketched out and reached an agreement during a mere 19-minute phone call about a price-fixing and market-allocation conspiracy that allegedly took place over a year later also belies common sense and undermines the plausibility of this allegation.

of **18** drugs whose price **Heritage** wanted to raise (CAC ¶ 136);

- innocuous emails and messages sent via LinkedIn on a **handful** of occasions over the course of **seven months** (April to November 2014) (*id.* ¶¶ 137-143);

- brief phone calls in April and October 2014 (without any allegations as to the contents) (*id.* ¶ 142);

- Heritage allegedly raising its price for Nimodipine in June 2014 after an **internal discussion** about increasing prices (*id.* ¶¶ 139, 141); and

- Ascend **allegedly** entering the market in 2015 with a WAC price higher than Heritage's and "gain[ing] market share throughout the second half of 2015" (*id.* ¶¶ 146-47).

These allegations do not "plausibly suggest a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful agreement," as required. *Howard Hess Dental Lab. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 254 (3d Cir. 2010). Plaintiffs' failure to sufficiently plead an agreement warrants dismissal. *See Twombly*, 550 U.S. at 555.

### 3.    Heritage's Unilateral Conduct Is Not Sufficient for Liability

In fact, Plaintiffs' allegations depict, at most, Malek/Heritage taking *unilateral* steps to prepare for Ascend's entrance in the market—not *concerted* action, as required for a Section 1 claim. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767-68 (1984). For example:

- All of the alleged communications between Malek and Ascend were initiated **by Malek**. (*See, e.g.,* CAC ¶¶ 135, 138, 140, 142-43.) Plaintiffs acknowledge that Ascend did not respond to many of Malek's messages, requiring Malek to follow up—not surprising given that Ascend had begun discussions with AHP in April 2014 to offload the product to them, and therefore any schemes by Malek would have been of little interest to Ascend.

- **Heritage** decided to increase the price for Nimodipine **prior to** any purportedly conspiratorial communication between Heritage and Ascend. (*Id.* ¶¶ 135-36.) The call between Malek and Ascend, which, "on information and belief," contained an agreement, did not occur until **after** Heritage announced this increase internally. (*Id.* ¶ 138.)

- Heritage purportedly raised its price for Nimodipine in June 2014, approximately **11 months** before Plaintiffs allege Ascend "launched" Nimodipine. (*Id.* ¶¶ 141, 146.)

In short, Ascend cannot be found liable for or dragged into a costly lawsuit based on the *unilateral*

conduct of Heritage, even if Heritage may have had an anti-competitive motivation (which has not been pled).  *See In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 396 (3d Cir. 2015) ("An important corollary to the agreement requirement is that § 1 liability cannot be predicated on a defendant's unilateral actions, no matter its anticompetitive motivations.").

Plaintiffs' failure to plead more than unilateral conduct is also evidenced by the fact that they do not allege the terms of the purported agreement.  Specifically, they allege that "Heritage *planned* to offer Ascend one-third (1/3) market share," (CAC ¶ 136), though they do not allege Malek, or anyone else at Heritage actually *made this offer*, nor do they allege such an offer was *accepted* by Ascend.  Plaintiffs also do not allege that Heritage actually *gave* Ascend one-third market share, instead vaguely alleging that "Ascend *began to gain* market share."  (*Id.* ¶ 147.) Such omissions are telling and further demonstrate that Plaintiffs' claim is insufficient.

### ii.      A Price-Fixing or Market Allocation Agreement Is Implausible

Furthermore, Plaintiffs' claim is not plausible because (1) Ascend did not control Nimodipine's market price; (2) there is an equally plausible economic explanation for the alleged conduct*;* and (3) Ascend's purported WAC price does not support collusive conduct.

### 1.      It Is Implausible that Ascend Conspired to Fix Prices or Allocate Market Share because Ascend Did Not Determine Either

As a threshold matter, it is wholly implausible that Ascend would have entered into an agreement to fix prices or allocate market share for a drug that it never sold—and never intended to sell—but instead, prior to any of the purportedly conspiratorial communications, had already offered to offload to a packager-distributor.  Moreover, as a mere contract manufacturer, Ascend was not even in a position to allocate market share, nor to choose or influence the price at which Nimodipine was sold to customers; such decisions were entirely under the control of its licensee, AHP.  *See Chocolate Confectionary*, 674 F. Supp. 2d at 604 n.34 (finding that the remote

wholesaler-defendant's "pricing power ends when its products leave the warehouse" and it "exercised no control over the prices [] charged in the U.S. market"). Plaintiffs' theory, which is based on two things Ascend did ***not control*** (price and market share), therefore cannot stand. *See, e.g.*, *id.* ("A plaintiff cannot hold a manufacturer liable for a price-fixing harm occurring after the product left the manufacturer's hands absent a showing that the manufacturer retained control over product pricing.").

Moreover, given the complete absence of any allegation of a conspiracy ***between Ascend and AHP***—the entity that sold and priced Nimodipine—it is not plausible, or even possible, for Ascend to have participated in a price-fixing or market-allocation conspiracy with Heritage.

### 2. There Is an Alternative Explanation for Heritage's Decision to Raise the Price for Nimodipine

Count Two also fails to plausibly state a claim because Heritage's alleged decision to raise the price of Nimodipine in anticipation of Ascend entering the market was rational economic conduct. Heritage was the ***only*** entity selling Nimodipine in 2014 because Sun and Caraco had left the market for Nimodipine. (CAC ¶¶ 131, 133.) It is logical that Heritage would raise its price upon learning Ascend obtained FDA approval to capture as much profit as possible during its final days as sole seller.[9] Because Heritage's "conduct [] is as consistent with permissible competition as with illegal conspiracy [it] does not, without more, support even an inference of conspiracy." *Matsushita*, 475 U.S. 574. Furthermore, the "obvious alternative explanation" for Heritage's alleged price increase in June 2014—anticipating competition from Ascend, as Malek himself stated to his staff (CAC ¶ 135)—compels dismissal.[10] *In re: McCormick & Co., Inc.*, 217 F. Supp.

---

[9] Plaintiffs even acknowledge that Heritage would have expected that the price would fall after Ascend's market entry, motivating one last hurrah, of heightened prices and profits. (*See* CAC ¶ 5 ("As additional generic manufacturers market the product, the prices continue to fall slowly.").)

[10] Had Heritage and Ascend fixed the market, Heritage would not have needed to suddenly and hurriedly raise its prices ***before*** Ascend's entry. Heritage's conduct undercuts—rather than supports—Plaintiffs' claim.

3d 124, 132 (D.D.C. 2016) ("Following *Twombly*, courts dismiss Section 1 complaints when there is an independent business justification for the observed conduct and no basis for rejecting it as the explanation for the conduct.").

### iii.    Plaintiffs Failed to Sufficiently Allege Any "Plus Factor"

Plaintiffs also fail to allege any of the typical "plus factors": "(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy." *Chocolate Confectionary*, 801 F.3d at 398. ***First***, there is no factual allegation showing Ascend was motivated (particularly as a contract manufacturer) to enter into a price-fixing conspiracy. ***Second***, Plaintiffs have not alleged that Ascend acted contrary to its interests. ***Third***, as discussed above, there are no factual allegations that there was a common plan between Ascend—not even manufacturing Nimodipine when the purported deal was struck in 2014—and Heritage. *See id.* (the "conspiracy" plus factor "looks for proof that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan"). Plaintiffs' failure to allege any plus factor provides another basis for dismissal. *Id.* (plaintiff "must establish at least one 'plus factor' to state a plausible conspiracy claim.")

### 1.    Plaintiffs Have Not Sufficiently Alleged an Antitrust Injury

Count Two should also be dismissed because Plaintiffs have not pled an antitrust injury stemming from Ascend's purportedly illegal conduct. Rather, Plaintiffs merely allege in a conclusory fashion that "Plaintiff States, governmental entities and/or consumers have been injured in their business or property because they have had to purchase or reimburse for Nimodipine at supra-competitive prices." (CAC ¶ 482.) Plaintiffs plead ***no facts*** to support this contention that the prices were "supra-competitive" and did not allege that competition between Ascend and Heritage decreased. Also, while they allege in conclusory fashion that there were

"Market Effects" (*see id.* ¶¶ 464-67), they offer no factual allegations showing that any entity paid artificially high prices or prices higher than supported by market conditions. *See In re Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262, 275 (3d Cir. 2018) (explaining that the antitrust laws "were intended to provide redress" for being made to pay higher prices).

There also is no causation. Because Ascend did ***not*** sell Nimodipine to customers and did ***not*** set the price paid by Plaintiffs or customers, it was impossible for Ascend to have caused an antitrust injury. *See In re: London Silver Fixing Ltd.*, 2018 WL 3585277 (S.D.N.Y. July 25, 2018) (finding the plaintiffs lacked antitrust standing in part because the alleged injuries were not proximately caused by defendants). Without an actionable antitrust injury, Plaintiffs' claims must be dismissed. *See SigmaPharm, Inc. v. Mutual Pharm. Co., Inc.*, 772 F. Supp. 2d 660, 673-74 (E.D. Pa. 2011) (Rufe, J.) (dismissing Section 1 claim because plaintiff failed to plead antitrust injury).

### b.     Plaintiffs Fail to Plead an Overarching Conspiracy as to Ascend

The Court should dismiss the overarching conspiracy allegations against Ascend because Plaintiffs fail to offer ***any*** factual allegations that Ascend participated in an overarching, industry-wide conspiracy. *See, e.g., In re Packaged Seafood Products Antitrust Litig.*, 2017 WL 35571, at *6 (S.D. Cal. Jan. 3, 2017) (sufficient allegations of a "tuna-specific" conspiracy did not "create a correspondingly viable conspiracy encompassing the entire packaged seafood products category"); *see also In re Auto. Parts Antitrust Litig.*, 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016) (the allegations were "sufficient to plead the existence of a common purpose among subsets of Defendants as to particular component parts, but are not sufficient to plead one, global auto parts conspiracy"). Ascend is not mentioned regarding an overarching conspiracy beyond general references to ***all*** Defendants. Plaintiffs thus fail all three prongs of the inquiry that the Third Circuit established to distinguish "a single conspiracy" from "separate and unrelated conspiracies":

12

(1) whether there was a common goal among the conspirators; (2) whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators; and (3) the extent to which the participants overlap in the various dealings. *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989).

**Prong One:** The contention that ***all*** of the Defendants, each of whom manufactures different drugs, made from different ingredients, for different uses, sold in different markets, shared a "common goal," is not supported and is implausible. While Plaintiffs have argued that the "common goal" was that the "competitors can reach out to each other and divide the market amongst each other to avoid price erosion through competition" (Dkt. 552 at 18), there are no allegations describing ***Ascend's*** other products, or whether ***Ascend*** even competes with any of the other Defendants, or that it participates in the same markets.

**Prong Two:** There are no allegations that Ascend cooperated with—let alone had "continuous cooperation" with—the other Defendants, or facts to show that Ascend was abiding by a "code of conduct." (*See* Dkt. 552 at 18) (a purported "code of conduct"); (*see also* CAC ¶ 14) (same). For example, Plaintiffs do not allege that Ascend had any knowledge that other Defendants were reaching similar agreements nor that any other Defendant had knowledge of Ascend's agreement. Thus, Ascend's conduct was not "required to insure the success of the venture" nor was the conduct of the others of any benefit to Ascend. *United States v. Chandler*, 388 F.3d 796, 811–12 (11th Cir. 2004) (finding no interdependence because "[t]he actions of one spoke did not facilitate the endeavors of other coconspirators or the venture as a whole."); *United States v. Kemp*, 500 F.3d 257, 289 (3d Cir. 2007) ("In evaluating interdependence, we consider how helpful one individual's contribution is to another's goals.").

**Prong Three:** Plaintiffs fail to plead that Ascend "overlaps" with the other Defendants. They allege a number of ***different*** conspiracies, some of which have some overlapping participants, without offering any specific factual allegations of how all of the Defendants, or the

various schemes, fit together.  This is not sufficient, ***particularly as to Ascend***, as Plaintiffs have not alleged any agreement or connection that Ascend had with the Defendants (other than, purportedly, with Heritage).  Indeed, except for the existence of ***three*** text messages and/or phone calls (of unknown content) between some Ascend employee and some Teva employee in August ***2013*** (*see* CAC ¶ 95), Plaintiffs do not allege a ***single instance*** of communication between Ascend and any Defendant besides Heritage. This absence is particularly telling because Plaintiffs claim that ***phone communication*** was the primary mode through which the Defendants purportedly conspired. (*See* CAC ¶ 15.)  Plaintiffs also excluded Ascend from the list of Defendants who purportedly attended conspiratorial dinners.  (*See* CAC ¶ 83.)  At most, Plaintiffs allege that "Defendants" (not even naming Ascend) attended trade shows, and the nonsensical fact that Ascend's headquarters, like much of the drug industry, is located in New Jersey, in purported geographical proximity to other Defendants.[11]  (CAC ¶¶ 82, 91.)  Such allegations fall well short of pleading that Ascend "overlapped" with the other Defendants, let alone that it conspired with them.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 349 (finding that membership in a common trade group did not plausibly suggest conspiracy).[12]

### c.    The State Law Claims Should be Dismissed

Plaintiffs' state law claims should be dismissed for the same reasons as their Section 1 claim.  *See, e.g., In re Suboxone Antitrust Litig.*, 2017 WL 4642285, at *12 (E.D. Pa. Oct. 17, 2017) ("[t]o the extent the state laws are commensurable with federal antitrust law and the Amended Complaint's allegations are insufficient to state a federal cause of action, the state law

---

[11] Of course, "proof of opportunity alone is insufficient to sustain an inference of conspiracy." *Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 53 (3d Cir. 2007).

[12] In addition to failing the three steps outlined in *Kelly*, Plaintiffs have not even specifically defined the nature of the purported overarching conspiracy: is it a hub and spoke conspiracy, or a wheel, or a chain, or an interconnected web? This lack of specificity provides yet another basis for dismissal of the global conspiracy claim against Ascend. *Twombly*, 550 U.S. at 558 (requiring "some specificity in pleading before allowing a potentially massive factual controversy to proceed" to an "inevitably costly and protracted discovery phase").

claims must also be dismissed").  Alternatively, if the Court dismisses the Section 1 claim, it should

decline to exercise supplemental jurisdiction over the state claims.  *See* 28 U.S.C. § 1367(c)(3).

The balance to be considered—judicial economy, convenience, fairness, and comity—favor

declining to exercise supplemental jurisdiction.  *See Simcic v. Pittsburgh Water & Sewer Auth.*,

605 F. App'x 88, 92 (3d Cir. 2015) ("absent extraordinary circumstances, jurisdiction should be

declined where the federal claims are no longer viable.").

## VI.    CONCLUSION

For the reasons set forth herein, Plaintiffs' Amended Complaint falls significantly short of

sufficiently pleading a conspiratorial agreement, let alone a plausible conspiracy.  Under such

circumstances, *Twombly* and its progeny require dismissal to avoid "allow[ing] a complex case of

extremely dubious merit to proceed . . . immers[ing] the parties in the discovery swamp . . . and

by doing so creat[ing] irrevocable as well as unjustifiable harm to the defendant." *In re Text*

*Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010).  Ascend, therefore, respectfully

requests that the Court dismiss all claims against Ascend with prejudice.[13]


Respectfully submitted,


/s/ W. Gordon Dobie                                         /s/ Irving Wiesen
W. Gordon Dobie                                            Irving Wiesen
WINSTON & STRAWN LLP                              LAW OFFICES OF IRVING L. WIESEN, P.C.
35 W. Wacker Dr.                                            420 Lexington Avenue - Suite 2400
Chicago, IL 60601                                           New York, New York 10170
Tel: (312) 558-5600                                         Tel: (212) 381-8774

---

[13] To the extent the Court dismisses any claims against Ascend, they should be dismissed **with prejudice** because any additional amendment would be futile given the fact that Plaintiffs moved to amend their complaint after 10 months, after significant investigation, and with the benefit of Malek as a cooperating witness yet come far from stating a plausible claim.  *See, e.g., McClean v. Delaware Cty. Hous. Auth.*, 220 F. Supp. 3d 607, 614 (E.D. Pa. 2016) (Rufe, J.) (dismissing the complaint, which had already been amended, with prejudice because amendment would be futile); *Gewirtz v. Opko Health, Inc.*, 230 F. Supp. 3d 440, 444 (E.D. Pa. 2017) (Rufe, J.) (stating that "[a]mendment is futile when the complaint, as amended, would fail to state a claim").

Fax: (312) 558-5700
WDobie@winston.com

Fax: (646) 536-3185
Iwiesen@wiesenlaw.com
(Appearance forthcoming)

*Counsel for Defendant Ascend Laboratories, LLC*

*Counsel for Defendant Ascend Laboratories, LLC*

16