# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------ :

IN RE; GENERIC PHARMACEUTICALS     :        MDL NO. 2724
PRICING ANTITRUST LITIGATION       :        16-MD-2724

                                             :

------------------------------------------------------------ :        HON. CYNTHIA M. RUFE

THIS DOCUMENT RELATES TO        :

*STATE AG ACTIONS*                     :

                                             :

-----------------------------------------------------------:

## State Opposition to Defendants' Joint Motion to Dismiss the States' Federal Law Claims For Lack of Standing

## TABLE OF CONTENTS

I.  The States Have Standing Under Federal Antitrust Law to
    Pursue Disgorgement and Other Equitable Remedies ........................................2

    A.  The court has broad powers to order equitable relief in
        general and disgorgement in particular....................................................5

    B.  "Indirect" purchaser *damages* jurisprudence is inapplicable to
        the States' request for *equitable* relief, including equitable
        monetary relief ...............................................................................7

II. Alleging Injury to the States' General Economies Does Not
    Transform Disgorgement Claims into Damages Claims ....................................8

## TABLE OF AUTHORITIES

**Cases:**                                                                 **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592 (1982) ................................................................. *passim*

*Apple Inc. v. Pepper,*
    138 S. Ct. 2647 (2018)...............................................................8

*Blue Shield of Virginia v. McCready,*
    457 U.S. 465 (1982)...................................................................8

*Broselow v. Fisher,*
    319 F.3d 605 (3d Cir. 2003)......................................................10

*Burch v. Goodyear Tire & Rubber Co.,*
    554 F.2d 633 (4th Cir. 1977) .....................................................9

*California v. American Stores Co.,*
    495 U.S. 271 (1990)...............................................................3, 5

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
    479 U.S. 104 (1986)...................................................................8

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006)...................................................................4

*Edmonson v. Lincoln Nat. Life Ins. Co.,*
    725 F.3d 406 (3d Cir. 2013).......................................................2

*Fed. Trade Comm'n v. AbbVie Inc.,*
    329 F. Supp. 3d 98 (E.D. Pa. 2018) ..........................................2

*F. Hoffman-La Roche Ltd.,*
    542 U.S. 155 (2004)...................................................................3

*Franklin v. Gwinnett County Pub. Sch.,*
    503 U.S. 60 (1992).....................................................................4

*FTC v. Bronson Partners, LLC,*
    654 F.3d 359 (2d Cir. 2011).......................................................2

*FTC v. Cephalon, Inc.,*
    100 F. Supp. 3d 433 (E.D. Pa. 2015) ........................................6

*FTC v. Com. Planet, Inc.,*
    815 F.3d 593 (9th Cir. 2016) .....................................................2

*Georgia v. Pennsylvania R.Co.,*
    324 U.S. 439 (1945)...............................................................9, 11

*Hawaii v. Standard Oil Co.,*
    405 U.S. 251 (1972)............................................................. *passim*

*Hood ex rel. Mississippi v. Microsoft Corp.,*
    428 F. Supp. 2d 537 (S.D. Miss. 2006).....................................9

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977)............................................................1, 7, 8

*Illinois v. SDS West Corp.,*
    640 F. Supp. 2d 1047 (C.D. Ill. 2009) ..................................9, 10

**Cases - continued**

*Indirect Purchaser Plaintiffs v. Toshiba Corp.*,
    No. 16-16427 (9th Cir. Aug. 12, 2016)....................................................................8
*In re Multidistrict Vehicle Air Pollution*,
    538 F.2d 231 (9th Cir. 1976) .................................................................................7
*In re Cathode Ray Tube ("CRT") Antitrust Litig.*,
    No. C-07-5944 JST,
    2016 WL 3648478 (N.D. Cal. July 7, 2016)..........................................................8
*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    MDL No. 1827,
    2011 WL 2790179 (N.D. Cal. July 12, 2011).....................................................6, 8
*Int'l Boxing Club of N.Y., Inc. v. United States*,
    358 U.S. 242 (1959).............................................................................................3
*Kansas v. Nebraska*,
    135 S. Ct. 1042 (2015).........................................................................................6
*Koresh v. SEC*,
    137 S. Ct. 1635 (2017).........................................................................................6
*Louisiana v. Borden, Inc.*,
    1995 WL 59548 (E.D. La. Feb. 10, 1995) ...........................................................10
*Maine v. Data Gen. Corp.*,
    697 F. Supp. 23 (D. Me. 1988) ...........................................................................10
*Maryland v. Louisiana*,
    451 U.S. 725 (1981)...........................................................................................11
*Missouri v. Freedom Fin. Corp.*,
    727 F. Supp. 1313 (W.D. Mo. 1989) ...................................................................10
*Mississippi v. Microsoft*,
    428 F. Supp. 2d 537 (S.D. Miss. 2006)................................................................10
*Mitchell v. Robert DeMario Jewelry, Inc.*,
    361 U.S. 288 (1960)..............................................................................................5
*Multidistrict Vehicle Air Pollution*,
    538 F.2d 231 (9th Cir. 1976) .................................................................................7
*New York v. General Motors Corp.*,
    547 F. Supp. 703 (S.D.N.Y. 1982) ......................................................................10
*Pennsylvania v. Harbour Portfolio Capital, LLC*,
    2018 WL 5994985 (W.D. Pa. Nov. 15, 2018) ........................................................9
*Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*,
    754 F.2d 404 (1st Cir. 1985)..................................................................................5
*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946).........................................................................................5, 6
*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013)...............................................................................8, 9
*Renegotiation Bd. v. Bannercraft Clothing Col*,
    415 U.S. 1 (1974).................................................................................................5

**Cases – continued**

*SEC v. Tome,*
   883 F.2d 1086 (2d Cir. 1987)................................................................2
*SEC v. Whittemore,*
   691 F. Supp. 2d 198 (D.D.C. 2010) ........................................................2
*United States v. KeySpan Corp.,*
   763 F. Supp. 2d 633 (S.D.N.Y. 2011)..............................................3, 6, 8
*United States v. Morgan Stanley,*
   881 F. Supp. 2d 563 (S.D.N.Y. 2012) ...................................................6
*United States v. Price,*
   688 F.2d 204 (3d Cir. 1982)..................................................................5
*Wisconsin v. Abbott Labs.,*
   341 F. Supp. 2d 1057 (W.D. Wis. 2004) ...............................................10
*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
   395 U.S. 100 (1969)..............................................................................3

**Statutes:**

15 U.S.C. § 15................................................................................................4
15 U.S.C. § 26.................................................................................... *passim*

**Rules:**

Fed. R. Civ. P. 54(b) .....................................................................................4
Fed. R. App. P. 4(a) ......................................................................................4

**Other Authorities:**

Phillip E. Areeda et al., Antitrust Law
   ¶ 325a (3d ed. 2007) ...........................................................................6
Einer Elhauge, Disgorgement as an Antitrust Remedy,
   76 Antitrust L.J. 79 (2009) ...................................................................6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  GENERIC PHARMACEUTICALS | : | MDL NO. 2724 |
| PRICING ANTITRUST LITIGATION | : | 16-MD-2724 |
| | : | |
| _____ | : | HON. CYNTHIA M. RUFE |
| | : | |
| THIS DOCUMENT RELATES TO | : | |
| | : | |
| *STATE AG ACTIONS* | : | |
| _____ | : | |

### State Opposition to Defendants' Joint Motion to Dismiss
### the States' Federal Law Claims For Lack of Standing

The States oppose Defendants' Joint Motion to Dismiss the States' Federal Law Claims. 17-cv-3768, ECF 74 (Def. Mem.).  Defendants argue that the States lack standing under federal law to pursue disgorgement or any relief under the States' federal *parens patriae* authority. Defendants argue that (i) disgorgement (and indeed any form of monetary relief) is merely relabeled damages; (ii) only a "direct" purchaser can pursue disgorgement under damages analysis derived from *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977); and (iii) the States are not "direct" purchasers.[1]  Similarly, Defendants argue that the States' *parens* claims are merely a "guise" by which the States seek to duplicate the claims asserted by others.

The States' federal disgorgement claim and the *parens* authority the States use to assert that claim are wholly appropriate.  As sovereigns in our federal system, the States have *parens* and other authority to pursue injunctive relief under Section 16 of the Clayton Act. *See Hawaii*

_____

[1]  Florida has brought direct purchaser claims under federal antitrust laws pursuant to assignment clauses contained in certain state contracts for the purchase of generic drugs.  CAC ¶ 641.

1

*v. Standard Oil Co.*, 405 U.S. 251, 261-64 (1972) ("Hawaii plainly qualifies as a person under [Section 16 of the Clayton Act], whether it sues in its proprietary capacity or as a *parens patriae*").  The States invoke *parens* authority and seek disgorgement under that authority, to protect the marketplace harmed by the Defendants' anticompetitive activities.  The equitable claim of disgorgement is not duplicative of or inconsistent with damages claims.  Disgorgement is a wholly different type of remedy -- an equitable remedy -- whereas damages is a legal remedy.  Rather than being a substitute for the legal remedy of damages suffered by market participants, disgorgement is available when the legal remedy is inadequate.

**I.      The States Have Standing Under Federal Antitrust Law to Pursue Disgorgement and Other Equitable Remedies**

"Disgorgement 'is a traditional equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs.'" *Fed. Trade Comm'n v. AbbVie Inc.,* 329 F. Supp. 3d 98, 137 (E.D. Pa. 2018) (citing *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 & n.3 (3d Cir. 2013) (quotations omitted)0; *see SEC v. Whittemore*, 691 F. Supp. 2d 198, 204 (D.D.C. 2010) (quoting *SEC v. Tome*, 883 F.2d 1086, 1096 (2d Cir. 1987) ("The paramount purpose of … ordering disgorgement is to make sure that wrongdoers will not profit from their wrongdoing.")); *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 368-70 (2d Cir. 2011) (disgorgement of profits divests a wrongdoer of ill-gotten gains to ensure the wrongdoer will not profit from their wrongdoing and to deter similar conduct); *FTC v. Com. Planet, Inc.,* 815 F.3d 593, 601 (9th Cir. 2016) (citations omitted) ("Defendants … are liable for the unjust gains the defendants collectively received, even if that amount exceeds (as it usually will) what any one defendant pocketed from the unlawful scheme.") (emphasis in original).

Disgorgement fits easily within the scope of equitable remedies available under Section 16 of the Clayton Act, 15 U.S.C. § 26, particularly for sovereign states with *parens* authority.

Sovereign states are the most suitable plaintiffs to seek such a remedy.  As the Supreme Court

has said, "[a] Government plaintiff, unlike a private plaintiff, must seek to obtain the relief

necessary to protect the public from further anticompetitive conduct and to redress

anticompetitive harm.  And a Government plaintiff has legal authority broad enough to allow it

to carry out this mission." *F. Hoffman-La Roche Ltd*, 542 U.S. 155, 170 (2004).  The States seek

to ensure an honest marketplace and protect the public from the harms of the Defendants'

anticompetitive conduct by ensuring that Defendants are unable to profit from their market

allocation and price-fixing agreements.

> The States seek disgorgement under Section 16 of the Clayton Act, which provides:
>
> Any person . . . shall be entitled to sue for and have injunctive relief . . . against
> threatened loss or damage by a violation of the antitrust laws . . . when and under the
> same conditions and principles as injunctive relief against threatened conduct that will
> cause loss or damage is granted by courts of equity, under the rules governing such
> proceedings.

> Section 16 permits broad injunctive relief.  Although Defendants emphasize the word

*threatened* to argue Section 16 provides only limited remedies, Def. Mem. at 5, the Supreme

Court has held the opposite: "the evident import of Congress's reference to '*threatened* loss or

damage' is not to constrict the availability of injunctive remedies against violations that have

already begun or occurred, but rather to expand their availability against harms that are as yet

unrealized." *California v. American Stores Co.*, 495 U.S. 271, 282 n.8 (1990) (emphasis in

original) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 & n.24

(1969)).  "Antitrust law is both forward-<u>and</u> backward-looking." *United States v. KeySpan*

*Corp.*, 763 F. Supp. 2d 633, 641 (S.D.N.Y. 2011) (citing *Int'l Boxing Club of N.Y., Inc. v. United*

*States*, 358 U.S. 242, 252 (1959) ("The decree should (1) put an end to the combination or

conspiracy when that is itself the violation; (2) deprive the antitrust defendants of the benefits of

their conspiracy; and (3) break up or render impotent the monopoly power which violates the Act (quotations omitted)").

The equitable claim of disgorgement is not a legal claim for damages and does not duplicate a damage claim. Damages are addressed under Section 4 of the Clayton Act, 15 U.S.C. § 15, and despite Defendants' efforts to conflate anything providing monetary relief with Section 4, Section 4 analyses do not apply to Section 16. Section 4 addresses legal remedies whereas Section 16 addresses equitable ones. Asserting both equitable and legal claims is perfectly appropriate, regardless of whether money is involved with both. Disgorgement and other equitable relief is proper when the legal remedy (damages) is inadequate. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (granting equitable relief requires "that remedies available at law, such as monetary damages, are inadequate to compensate for [the] injury"). Adequacy, not potential issues of duplication, is what matters when considering equitable remedies and the question of adequacy is not yet ripe. Adequacy is analyzed much later in a litigation, when the legal remedy has been decided or otherwise comes into focus.[2] Indeed, the typical convention is for the court to first inquire "whether monetary damages provide an *adequate* remedy" and if not, then "whether equitable relief would be appropriate." *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992) (emphasis added). Asserting both equitable and legal claims, as the States have done, is what plaintiffs often do, regardless of whether both are "monetary."

---

[2] Completely resolving a civil action requires entering a judgment appealable as of right under Fed. Rule App. Proc. 4(a). Such a judgment resolves all legal and equitable claims and the Federal Rules prefer that complete resolution. *See* Fed. Rule Civ. Pro. 54(b) ("When an action presents more than one claim for relief . . . , the court may direct entry [as to fewer than all claims], only if the court expressly determines that there is no just reason for delay.").

A.      **The court has broad powers to order equitable relief in general and disgorgement in particular.**

The Supreme Court's framework for construing a statute providing for equitable relief is contained in *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946). In *Porter*, the Court held that where a statutory scheme provides for compensatory legal damages under one provision and equitable relief under another, the full range of possible traditional equitable relief is available unless expressly precluded by the statute itself. 328 U.S. at 398-99. Additionally, where the public interest is involved, the equitable powers of a district court are broader and more flexible than when only a private controversy is at stake. *Id.* at 398. The Supreme Court applies this framework,[3] as does the Third Circuit.[4]

Indeed, the Supreme Court unanimously, clearly, and decisively applied the *Porter* framework to a state's claim under Section 16 in *California v. American Stores Co.*, 495 U.S. 271 (1990):

> [Section] 16 'states no restrictions or exceptions to the forms of injunctive relief a private plaintiff may seek, or that a court may order. . . . Rather, the statutory language indicates Congress' intention that traditional principles of equity govern the grant of injunctive relief.' We agree.

*Id.* at 282 (quoting *Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 416 (1st Cir. 1985).

Disgorgement is a well-established traditional equitable remedy. Considering questions well beyond whether disgorgement is an appropriate equitable remedy, the Supreme Court has

---

[3] *E.g., Renegotiation Bd. v. Bannercraft Clothing Col,* 415 U.S. 1, 19-20 (1974*); Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 290-91 (1960).

[4] *United States v. Price*, 688 F.2d 204, 211 (3d Cir. 1982).

recently considered whether disgorgement is a penalty for purposes of a statute of limitations[5] and when one state is entitled to disgorgement from another state.[6]  Many lower courts have applied the Supreme Court's framework described in *Porter/American Stores* to uphold disgorgement claims under Section 16.  *E.g., United States v. KeySpan Corp.,* 763 F. Supp. 2d 633, 639-41 (S.D.N.Y. 2011) (applying *Porter* and holding federal government's disgorgement claims viable under federal antitrust law); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* MDL No. 1827, 2011 WL 2790179, at **3-4 (N.D. Cal. July 12, 2011) (adopting *KeySpan*'s application of *Porter* and concluding "that disgorgement is available to Oregon"); *United States v. Morgan Stanley,* 881 F. Supp. 2d 563, 568 (adopting *KeySpan* in approving disgorgement to deter future anticompetitive behavior); *FTC v. Cephalon, Inc.,* 100 F. Supp. 3d 433, 437-39 (E.D. Pa. 2015) (providing disgorgement unless the court's equitable jurisdiction is clearly limited).  There is in fact little disagreement among commentators about the propriety of disgorgement as an antitrust remedy.  *KeySpan Corp.,* 763 F. Supp. 2d at 642 (citing Phillip E. Areeda et al., Antitrust Law ¶ 325a (3d ed. 2007) ("[E]quity relief may include, where appropriate, the disgorgement of improperly obtained gains."); Einer Elhauge, Disgorgement as an Antitrust Remedy, 76 Antitrust L.J. 79, 79 (2009) ("One's first reaction might well be that perhaps the rare usage reflects some underlying insecurity about whether disgorgement really is a permissible antitrust remedy. But there is surprisingly little doubt that equitable antitrust remedies include requiring violators to disgorge any illegally obtained profits.")).

---

[5] *Koresh v. SEC*, 137 S. Ct. 1635 (2017).

[6] *Kansas v. Nebraska*, 135 S. Ct. 1042, 1056-58 (2015).

**B.**      **"Indirect" purchaser *damages* jurisprudence is inapplicable to the States' request for *equitable* relief, including equitable monetary relief.**

Rather than apply or distinguish the *Porter* framework for analyzing equitable relief, Defendants rely on cases that interpret *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) to argue that the disgorgement claims are bare "monetary" claims that should be evaluated under a damages paradigm.[7]  Defendants argue that *Illinois Brick* provides the standard for considering any federal "monetary" relief and that the Court should dismiss any claim for "monetary" relief that is inconsistent with or duplicates what *Illinois Brick* allows.  Disgorgement is not inconsistent with *Illinois Brick*, because *Illinois Brick* does not apply.  Disgorgement does not duplicate damages; disgorgement is an equitable remedy available when damages are inadequate.[8]

As the *Porter* line of cases discussed above illustrates, constructions of Section 4 should not be applied to Section 16 of the Clayton Act.  Defendants do not discuss or distinguish the leading Supreme Court *parens patriae* case that specifically notes how different the damages provision of Section 4 is from the injunctive relief provision of Section 16.  In *Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972), the Court held that Section 4 provided a damage remedy

---

[7] One case relied on by Defendants, *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231 (9th Cir. 1976), predates *Illinois Brick*.  Defendants mischaracterize that case by editing the court's discussion of a restitution claim to be a disgorgement claim.  Def. Mem. at 5. Disgorgement seeks to deprive the defendant of ill-gotten gains and the *Multidistrict Vehicle* court endorsed that use of injunctive relief in its discussion of the retrofit remedy, after the court had rejected the restitution claim.  538 F.2d at 234 ("There are three major antitrust functions which injunctive relief granted under § 16 might serve: (1) putting an end to the illegal conduct, (2) *depriving violators of the benefits of their illegal conduct*, and (3) restoring competition in the market place.") (emphasis added).

[8] Accordingly, the court might consider disgorgement being offset by the damages awarded.

for harm inflicted on "business and property," or "commercial interests" and rejected the argument that Hawaii's general economy was "business or property." *Id.* at 261-64. The Court noted that the language of Section 16 was "notably different" and that Hawaii's injunctive relief claim was not limited to harm inflicted on "business and property." *Id.* at 261 ("there is a striking contrast between the potential impact of suits for injunctive relief [Section 16] and suits for damages [Section 4]").[9]

Case law fully supports the proposition that broader relief is available to the government as plaintiff, than to a private plaintiff. Indeed, the claims for disgorgement in *KeySpan* and *In re TFT-LCD (Flat Panel) Antitrust Litigation* were permissible "because they were brought by the Government instead of private party." *In re Cathode Ray Tube ("CRT") Antitrust Litig.,* No. C-07-5944 JST, 2016 WL 3648478, at *13 n.26 (N.D. Cal. July 7, 2016), *appeal filed sub nom., Indirect Purchaser Plaintiffs v. Toshiba Corp.,* No. 16-16427 (9th Cir. Aug. 12, 2016).

## II.   Alleging Injury to the States' General Economies Does Not Transform Disgorgement Claims into Damages Claims

Typically, a state will file suit in a federal court in its proprietary, sovereign, or *parens patriae* capacity (or some combination thereof). *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208, 215 (2d Cir. 2013). A state's proprietary interest is one in which the "[s]tate sues much like a private party" having suffered "direct, tangible injury." *Id.* In a sovereign capacity, a state may

---

[9] In addition to long distinguishing between Section 4 and Section 16, the Supreme Court has rejected extending *Illinois Brick. Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 112-13 (1986) (noting more lenient standing requirements for Section 16, than for Section 4); *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 474-75 (1982) (limiting the antitrust injury element of *Illinois Brick* to when there is a risk of duplicative recovery). The Supreme Court's reluctance to extend *Illinois Brick* was illustrated recently in a case in which 31 states urged the Court to overrule *Illinois Brick. E.g., Apple Inc. v. Pepper,* 138 S. Ct. 2647 (2018) BurNo. 17-204, Transcript of Oral Argument at 18 (U.S. Nov. 26, 2018) ("But why should we build on *Illinois Brick*? Shouldn't we question *Illinois Brick*?") (Gorsuch, J.).

sue to enforce its legal codes and to maintain recognition of its borders. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982). When a state brings a suit in its *parens* capacity, the state brings suit "to protect 'quasi-sovereign' interests." *Purdue Pharma*, 704 F.3d at 215; *Pennsylvania v. Harbour Portfolio Capital, LLC*, 2018 WL 5994985, at *2 (W.D. Pa. Nov. 15, 2018) (a state can bring a suit pursuant to its *parens* authority when it has "a 'quasi-sovereign interest' in the litigation."). Quasi-sovereign interests are "the set of interests that the State has in the well-being of its populace." *Snapp*, 458 U.S. at 602. A state bringing a suit "to protect 'the health and well-being—both physical and economic—of its residents in general" is a quintessential example of a state protecting such interests. *Harbour Portfolio Capital, LLC*, 2018 WL 5994985, at *2 (quoting *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 697). That includes "securing the integrity of the marketplace." *Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537 (S.D. Miss. 2006).

The Supreme Court's analysis in *Snapp* supports the States' standing here. The *Snapp* Court held that to demonstrate Article III *parens patriae* standing, the state must articulate an interest apart from the interest of a particular private party "i.e. the State must be more than a nominal party. The State must express a quasi-sovereign interest . . . in the health and well-being – both physical and economic – of its residents in general [and] a state has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Snapp*, 458 U.S. at 607; *see Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 634-35 (4th Cir. 1977) (Maryland Attorney General pursuant to his/her *parens patriae* authority has standing to bring a claim for injunctive relief to address injury to the State's general economy).

The States have asserted a well-established quasi-sovereign interest: securing an honest marketplace. *E.g., Georgia v. Pennsylvania R.Co.,* 324 U.S. 439, 450-51 (1945); *Illinois v. SDS*

*West Corp.*, 640 F. Supp. 2d 1047, 1050-51 (C.D. Ill. 2009); *Mississippi v. Microsoft*, 428 F.

Supp. 2d 537, 545 (S.D. Miss. 2006); *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1062-63

(W.D. Wis. 2004); *Missouri v. Freedom Fin. Corp.*, 727 F. Supp. 1313, 1317 (W.D. Mo. 1989);

*Maine v. Data Gen. Corp.*, 697 F. Supp. 23, 25 (D. Me. 1988); *New York v. General Motors

Corp.*, 547 F. Supp. 703, 705-06 (S.D.N.Y. 1982); *Louisiana v. Borden, Inc.*, 1995 WL 59548, *

2 (E.D. La. Feb. 10, 1995); *see* CAC ¶¶ 1-17, 464-468.

Defendants make two assertions to argue that securing an honest marketplace is not a

quasi-sovereign interest.  First, Defendants claim that the "States have not alleged an injury apart

from the interests of particular private parties . . . individual consumers who purchased, or were

reimbursed for purchases of, particular identified products." Def. Mem. at 9.  Distorting the

*Snapp* requirement that a state asserting a *parens* claim be more than a nominal party and listing

only some of the many harms that the States allege the Defendants have caused, Defendants

appear to argue that a state's *parens* standing is voided if the defendant identifies harms inflicted

on individual consumers.  The States recognize that many individual parties are harmed when

Defendants act dishonestly in the marketplace.  That does not make an honest marketplace any

less of a quasi-sovereign interest that the States can vindicate.  Indeed, a quasi-sovereign interest

must affect "a 'sufficiently substantial' segment of [a state's] residents." *Broselow v. Fisher*,

319 F.3d 605, 609 (3d Cir. 2003) (quoting *Snapp*, 458 U.S. at 607).  The States have alleged that

interest, *e.g.*, CAC ¶¶ 1-17, 464-468, and more than a "sufficiently substantial segment" of the

States' residents use generic drugs.

Defendants' second distortion is that "*parens patriae* standing exists only when

'individual consumers cannot be expected to litigate' the claims a state purports to assert on their

behalf." Def. Mem. at 9.  Nothing in the case law requires that individual consumers be unable

to litigate a claim for the state to have *parens* standing. Defendants miscite *Maryland v. Louisiana*, 451 U.S. 725 (1981) for that proposition. First, that case considered **original** jurisdiction in the Supreme Court, which is significantly more limited than the court's jurisdiction here. Second and importantly, the Court granted *parens patriae* jurisdiction without the limitation urged by Defendants and drew the line between the state being a nominal party and the state representing its citizens:

> Jurisdiction is also supported by the States' interest as *parens patriae*. A State is not permitted to enter a controversy as a nominal party in order to forward the claims of individual citizens. But it may act as the representative of its citizens in **original** actions where the injury alleged affects the general population of a State in a substantial way.

Id. at 737 (citations omitted) (emphasis added).

In evaluating whether a state has *parens patriae* authority, a court may consider "whether the injury is one that the State, if it could, would like to attempt to address through its sovereign lawmaking powers" and whether the challenged conduct affects, either directly or indirectly, a "sufficiently substantial segment of the population." *Snapp*, 458 U.S. at 607. The *Snapp* Court stated that "trade barriers may cause a blight no less serious than the spread of noxious gas over the land or the deposit of sewage in the streams. They may affect the prosperity and welfare of a State as profoundly as any diversion of the waters from the rivers[.]" *Id.* at 605 (quoting *Georgia v. Penn R. Co.*, 324 U.S. at 450-51).

Here the "noxious gases" are the Defendants' anticompetitive activities. These activities increase prices of prescription drugs, limit availability of those drugs, and harm the States' economies, governmental entities, consumers, and businesses forced to endure the "noxious gases." The States are wholly entitled to assert the equitable claim of disgorgement in the quest to eliminate that blight.

Respectfully,

STATE OF MARYLAND

BRIAN E. FROSH
MARYLAND ATTORNEY GENERAL


John R. Tennis
Assistant Attorney General
Chief, Antitrust Division
Schonette J. Walker
Assistant Attorney General
Deputy Chief, Antitrust Division
Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, Maryland 21202
(410) 576-6470
jtennis@oag.state.md.us
swalker@oag.state.md.us


W. Joseph Nielsen
Assistant Attorney General
State of Connecticut
55 Elm Street
P.O. Box 120
Hartford, CT  06141-0120
(860) 808-5040
Joseph.Nielsen@ct.gov


*Liaison Counsel for the States*

STATE OF NEW YORK

LETITIA JAMES
NEW YORK ATTORNEY GENERAL

*/s/ Robert L. Hubbard*
Robert L. Hubbard
Assistant Attorney General
Alvaro Mateo Alonso, Legal Intern
Office of the Attorney General
Antitrust Bureau
28 Liberty Street, 20th Floor
New York, NY 10005
(212) 416-8267
Robert.Hubbard@ag.ny.gov

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  GENERIC PHARMACEUTICALS<br>PRICING ANTITRUST LITIGATION | : | **MDL 2724**<br>**16-MD-2724**<br>**HON. CYNTHIA M. RUFE** |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | |
| | : | |
| *State Attorneys General Litigation* | : | |
| | : | |

### [Proposed] ORDER

**AND NOW**, this ____ day of _____, 2019, upon consideration of Defendants'

Joint Motion to Dismiss the States' Federal Law Claims For Lack of Standing, it is hereby

**ORDERED** that the Motion is **DENIED**.

It is so **ORDERED**.

BY THE COURT:

_____
CYNTHIA M. RUFE, J.