**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

**IN RE: GENERIC PHARMACEUTICALS
PRICING ANTITRUST LITIGATION**

---

**THIS DOCUMENT RELATES TO:**

*State Attorneys General Litigation*

---

**MDL 2724
16-MD-2724
HON. CYNTHIA M. RUFE**


**17-cv-03768 (CMR)**

<u>**MEMORANDUM OF LAW IN SUPPORT OF EMCURE PHARMACEUTICALS LTD.
AND SATISH MEHTA'S MOTION TO DISMISS THE PLAINTIFF STATES'
CONSOLIDATED AMENDED COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..............................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................2

III.  LEGAL STANDARD..........................................................................................3

IV.  ARGUMENT ......................................................................................................4

       1.      Emcure and Mr. Mehta Are Not Subject to the Court's Exercise of General Personal Jurisdiction ...............................................................................6

       2.      The Complaint Does Not Allege a Basis on Which To Exercise Specific Jurisdiction over Emcure or Mr. Mehta......................................................9

       B.     The Complaint Does Not Allege Facts Suggesting Emcure or Mr. Mehta Participated in the Alleged Conspiracies ...........................................15

              1.      To Survive a Motion To Dismiss, the Complaint Must Allege Facts Sufficient To Support at Least a Reasonable Inference that Each Defendant Conspired .................................................................15

              2.      The Complaint Does Not Allege Facts that Suggest that Emcure or Mr. Mehta Participated in the Alleged Doxy DR Conspiracy .................15

              3.      The Complaint Does Not Allege Facts that Support a Reasonable Inference that Emcure Participated in the Alleged Overarching Conspiracy ................................................................................18

V.   CONCLUSION.................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Action Mfg. Co., Inc. v. Simon Wrecking Co.*,
   375 F. Supp. 2d 411 (E.D. Pa. 2005) ........................................................................8

*Arch v. Am. Tobacco Co.*,
   984 F. Supp. 830 (E.D. Pa. 1997) ..............................................................................8

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*,
   480 U.S. 102 (1987) ..................................................................................................13

*In re Auto. Refinishing*,
   358 F.3d 288 (3d Cir. 2004) .......................................................................................5

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999) .............................................................................3, 4, 17

*Batista v. O'Jays Gigs, Inc.*,
   C.A. No. 18-0636, 2019 WL 400060 (E.D. Pa. Jan. 30, 2019) ...............................3

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017) ........................................................................................4, 13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...........................................................................................11, 13

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) .....................................................................................15

*Cerciello v. Canale*,
   563 Fed. App'x 924 (3d Cir. 2014) ..........................................................................14

*Chavez v. Dole Food Co.*,
   836 F. 3d 205 (3d Cir. 2016) .....................................................................................4

*CMF Assocs., LLC v. Scout Media, Inc.*,
   C.A. No. 15-01250, 2015 WL 2125131 (E.D. Pa. May 6, 2015) ............................11

*Connecticut v. Teva Pharm. USA, Inc.*,
   No. 3:19-cv-00710-MPS (D. Conn. May 10, 2019), ECF No. 1 ...............................5

*Copia Commc'ns, LLC v. AMResorts, L.P.*,
   C.A. No. 16-5575, 2017 WL 4012687 (E.D. Pa. Sept. 11, 2017) .......................9, 11

*Copperweld Corp. v. Indep. Tube Corp.,*
    467 U.S. 752 (1984)...................................................................................16

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)..............................................................................4, 6, 7

*DaimlerChrysler Corp. v. Askinazi,*
    C.A. No. 99-5581, 2000 WL 822449 (E.D. Pa. June 26, 2000) ...............................14

*Decker v. Dyson,*
    165 Fed. App'x 951 (3d Cir. 2006)....................................................................9

*Decon Labs., Inc. v. Decon Labs. Ltd.,*
    703 F. Supp. 2d 481 (E.D. Pa. 2009) ................................................................5

*DeGregorio v. Marriott Int'l, Inc.,*
    No. CV 17-3867, 2017 WL 6367894 (E.D. Pa. Dec. 13, 2017) ...........................5, 6

*In re Elec. Carbon Prods. Antitrust Litig.,*
    333 F. Supp. 2d 303 (D.N.J. 2004) ..................................................................15

*Farber v. Tennant Truck Lines, Inc.,*
    84 F. Supp. 3d 421 (E.D. Pa. 2015) .............................................................3, 4, 9

*Flaccus v. Advanced Disposal Servs., Inc.,*
    C.A. No. 17-4808, 2018 WL 3731095 (E.D. Pa. Aug. 6, 2018)................................7

*In re Generic Pharm. Pricing Antitrust Litig.,*
    338 F. Supp. 3d 404 (E.D. Pa. 2018) ...................................................15, 16, 19

*In re Generic Pharm. Pricing Antitrust Litig.,*
    No. 18-cv-02641 (E.D. Pa. May 2, 2019), ECF No. 81.......................................18, 19

*In re Generic Pharm. Pricing Litig.,*
    No. 17-cv-03768 (E.D. Pa., Feb. 21, 2019), ECF No. 70-1 ...................................18

*Goodway Grp. v. Sklerov,*
    C.A. No. 18-0900, 2018 WL 3870132 (E.D. Pa. Aug. 15, 2018)...............9, 10, 11

*Goodyear Dunlop Tires Operations S.A. v. Brown,*
    564 U.S. 915 (2011)...............................................................................4, 6

*Hlavac v. DGG Props.,*
    No. C.A. 04-6112, 2005 WL 839158 (E.D. Pa. Apr. 8, 2005) ...............................10

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d, 315 .................................................................................3, 4, 17

*In re: Iowa Ready-Mix Concrete Antitrust Litig.*,
    768 F. Supp. 2d 961 (N.D. Iowa 2011)...................................................................18

*Jung v. Ass'n of Am. Med. Colls.*,
    300 F. Supp. 2d 119 (D.D.C. 2004)......................................................................15

*Katz v. DNC Servs. Corp.*,
    C.A. No. 16-5800, 2017 WL 5885672 (E.D. Pa. Nov. 29, 2017).........................8

*Lifewatch Servs. Inc. v. Highmark Inc.*,
    902 F.3d 323 (3d Cir. 2018)...................................................................................17

*Lucas v. Gulf & W. Indus., Inc.*,
    666 F.2d 800 (3d Cir. 1981).....................................................................................8

*Malik v. Cabot Oil & Gas Corp.*,
    710 Fed. App'x 561 (3d Cir. 2017)..........................................................................6

*Miller Yacht Sales, Inc. v. Smith*,
    384 F.3d 93 (3d Cir. 2004).......................................................................................3

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007)....................................................................10, 12, 13

*In re Platinum & Palladium Antitrust Litig.*,
    No. 1:14-cv-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017)..............11

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*;
    No. 08-cv-42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011)...................................18

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ...................................................................15

*Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*,
    C.A. No. 16-6076, 2019 WL 1437981 (E.D. Pa. Mar. 29, 2019)...........................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...............................................................15

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
    530 F.3d 204 (3d Cir. 2008).....................................................................................3

*Toussant v. Williams*,
    62 F. Supp. 3d 417 (E.D. Pa. 2014) .....................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................................................12

*Wilson v. RIU Hotels & Resorts,*
   C.A. No. 10-7144, 2011 WL 3241386 (E.D. Pa. July 29, 2011) ............................................. 9

## STATUTES

15 U.S.C. § 22 .................................................................................................................... 5

Clayton Act ........................................................................................................................ 5

Sherman Act ...................................................................................................................... 3

## RULES

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 1, 3, 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 15

Emcure Pharmaceuticals Ltd. ("Emcure") and Satish Mehta ("Mr. Mehta") respectfully submit this memorandum of law in support of their motion to dismiss the Plaintiff States' Consolidated Amended Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## I.    INTRODUCTION

The Complaint lacks a basis on which to assert personal jurisdiction over Emcure or Mr. Mehta.  Emcure—organized and doing business in India—has no relationship with the United States aside from a normal, arms-length, parent-subsidiary relationship with another defendant already in this action, Heritage Pharmaceuticals Inc. ("Heritage").  It is on that basis that the Complaint attempts to embroil Emcure and its CEO (Mr. Mehta) in expansive foreign litigation. Personal jurisdiction—whether general or specific—should not be exercised here.  As to the former, neither Emcure nor Mr. Mehta has "continuous or systematic" relationships with the forum, or the U.S. as a whole, such that they could be considered "at home" here.  As to the latter, the Complaint does not allege facts sufficient to support a reasonable inference that Emcure or Mr. Mehta's suit-related conduct arises from or relates to their contact with the forum or the United States generally.

Even were the Complaint not jurisdictionally deficient, it does not state claims for relief, as it lacks facts to support its claims that Emcure or Mr. Mehta participated in a conspiracy.  At bottom, the Complaint asks this Court to make Emcure answer for the conduct of a subsidiary (which is properly before the Court and as to which issue has been joined).  The Complaint should

---

[1] Though Emcure and Mr. Mehta's motion applies to all claims in the Complaint, Emcure and Mr. Mehta also join Defendants' Joint Motion to Dismiss Plaintiffs' State-Law Claims to address additional state-specific bases for dismissal.  Emcure and Mr. Mehta also incorporate by reference Defendants' Joint Motion to Dismiss Plaintiffs' Federal Law Claims For Lack of Standing.

be dismissed.

## II.    FACTUAL BACKGROUND

Plaintiff States (collectively, "Plaintiffs") assert claims against 20 different Defendants based on an alleged conspiracy to fix prices and allocate markets for 15 different pharmaceutical products.  In addition to these 15 individual conspiracies, the Complaint alleges an overarching conspiracy among all corporate Defendants "to unreasonably restrain trade in the generic pharmaceutical industry."  *See* CAC ¶ 328.  Though Defendants manufacture and sell different products, the Complaint posits that Defendants were united by a common goal to avoid price erosion for essentially all generic pharmaceuticals, *id.* at ¶ 12, and then sought to advance that goal through frequent "in person" communications that occurred at "trade shows, customer events and smaller more intimate dinners and meetings."  *Id.* at ¶ 15.

The Complaint does not allege that Emcure manufactured or sold any generic pharmaceuticals here or that Emcure or Mr. Mehta attended any trade shows, customer events, or intimate dinners or meetings.  Absent is any suggestion that Emcure or its executives conducted *any* business in the United States, sold *any* products listed in the Complaint, or belonged to *any* trade associations.  Rather, the Complaint alleges just three facts from which it would have this Court connect Emcure and Mr. Mehta to the other Defendants in this case:  (i) that Emcure is the parent company of Heritage; (ii) that Heritage employees visited Emcure's office in India; and (iii) that several months after that visit, Mr. Mehta telephoned his counterpart at Mylan.  *Id* at ¶ 183. As to the last of those alleged facts, the Complaint contains no details about the alleged conversation, but nonetheless relies on that opaque interaction to allege that Emcure participated in a conspiracy together with Heritage and Mylan to fix prices and allocate the market for Doxy DR.  *Id.* at ¶ 499.  The Complaint goes even further—it goes from one phone call and an alleged

conspiracy regarding Doxy DR to claim that Emcure should be deemed "part of an overarching conspiracy among all of the corporate Defendants." *Id.* at ¶ 504.

## III.    LEGAL STANDARD

With Emcure and Mr. Mehta now having asserted a challenge to jurisdiction under Fed. R. Civ. P. 12(b)(2), and having submitted declaration evidence in support of that challenge,[2] "the burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff." *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 426 (E.D. Pa. 2015).  Therefore, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction," *see id.* (citations omitted), which includes demonstrating, "'with reasonable particularity', enough contact between the defendant and the forum to support the exercise of personal jurisdiction by the forum state." *Batista v. O'Jays Gigs, Inc.*, C.A. No. 18-0636, 2019 WL 400060, at *3 (E.D. Pa. Jan. 30, 2019*)*.  A "plaintiff must sustain [this] burden of proof [by] establishing jurisdictional facts through sworn affidavits or other competent evidence ... [but] [a]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004).

To plead a violation of Section One of the Sherman Act, a "plaintiff must show that the defendant was a party to a 'contract, combination ... or conspiracy.'" *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.,* 530 F.3d 204, 218 (3d Cir. 2008).  The Third Circuit has made clear that these three terms "collectively [] require 'some form of concerted action.'"  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d, 315 (3d Cir. 2010) (quoting *In re Baby Food Antitrust Litig.,* 166 F.3d 112, 117 (3d Cir. 1999).  Thus, "[t]he existence of an agreement is the hallmark of a Section 1

---

[2] *See* Declaration of Sanjay Kumar (the "Emcure Declaration"), attached hereto as Exhibit 1; Declaration of Bharat Patel (the "Heritage Declaration"), attached hereto as Exhibit 2; Declaration of Mr. Satish Mehta, (the "Mehta Declaration"), attached hereto as Exhibit 3.

claim." *Id.* (quoting *Baby Food,* 166 F.3d at 117).  And a plaintiff seeking to survive a motion to dismiss must allege "enough facts to raise *a reasonable expectation* that discovery will reveal evidence of illegal agreement."  *Id.* at 324.

## IV.   ARGUMENT

### A.   The Complaint is Jurisdictionally Deficient

The Complaint does not support a finding of general or specific personal jurisdiction over Emcure or Mr. Mehta, and the materials submitted with this motion demonstrate that the exercise of jurisdiction is unwarranted on any pleading.

The exercise of personal jurisdiction can have a general or specific basis.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011).  In all but the most exceptional case, a corporation is deemed "at home" only where it is incorporated and maintains its principal place of business.  *Farber*, 84 F. Supp. 3d at 429.   Thus, it is "incredibly difficult to establish general jurisdiction [over a corporate entity] in a forum *other* than the place of incorporation or principal place of business." *Chavez v. Dole Food Co.*, 836 F. 3d 205, 223 (3d Cir. 2016) (emphasis in original).

Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum."  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017).  The crux of a specific jurisdictional inquiry is whether the claims "arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being hailed into court in that

forum." *DeGregorio v. Marriott Int'l, Inc.*, No. CV 17-3867, 2017 WL 6367894, at *4 (E.D. Pa. Dec. 13, 2017).

The Complaint relies on the casual assertion, not supported by facts (and now rebutted by competent evidence), that personal jurisdiction exists "over all of the Defendants because they either transact business both in this District and in the District of Connecticut [], or they have engaged in anticompetitive and illegal conduct that has had an impact both in this District and in the District of Connecticut." CAC ¶ 20. For purposes of this motion (and notwithstanding the Complaint's more narrow allegation), Emcure and Mr. Mehta assume that plaintiffs intended also to invoke the Clayton Act's national service of process provision, 15 U.S.C. § 22, as the statutory basis for jurisdiction with respect to its federal antitrust claims, in light of the rule that "'a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process.'" *Decon Labs., Inc. v. Decon Labs. Ltd.*, 703 F. Supp. 2d 481, 484 (E.D. Pa. 2009) (quoting *In re Auto. Refinishing,*, 358 F.3d 288, 298 (3d Cir. 2004)). The Clayton Act "authorizes nationwide service of process—and thus, nationwide personal jurisdiction—based on a non-resident defendant corporation's aggregate contacts with the United States as a whole." *Radio Music License Comm., Inc. v. Glob. Music Rights, LLC*, C.A. No. 16-6076, 2019 WL 1437981, at *21 (E.D. Pa. Mar. 29, 2019). Even applying the generous "national contacts," analysis, the Court lacks a proper basis on which to exercise personal jurisdiction over Emcure[3] and Mr. Mehta.

---

[3] Emcure is so peripheral to the alleged "conspiracy" that it was not even named or mentioned in the most recent complaint filed by the States, which did name 20 other domestic and foreign corporate defendants. *See* Complaint, *Connecticut v. Teva Pharm. USA, Inc.*, No. 3:19-cv-00710 MPS (D. Conn. May 10, 2019), at ECF No. 1.

1.      **Emcure and Mr. Mehta Are Not Subject to the Court's Exercise of General Personal Jurisdiction**

General jurisdiction over non-resident defendants requires a showing of "continuous and systematic" contacts with the forum. *See, e.g., Goodyear*, 564 U.S. at 924. It is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business," or over an individual in a forum other than the individual's domicile, and a court is permitted to do so only in the rare and "exceptional" case in which the defendant's operations in the forum are "so substantial and of such a nature as to render [it] at home" in that forum for purposes of general jurisdiction. *See Malik v. Cabot Oil & Gas Corp.*, 710 Fed. App'x 561, 564 (3d Cir. 2017) (quoting *Daimler*, 134 S. Ct. at 761).

a.      **Emcure**

Emcure is incorporated, and maintains its principal place of business, in India. *See* Emcure Decl. ¶ 3. Emcure has not appointed an agent for service of process in the United States, does not maintain offices or places of business in the United States, and does not own or lease real property or maintain bank accounts in the United States. *Id.* at ¶¶ 18-20. It is not qualified or licensed to do business in the United States, and has neither incurred nor paid taxes in Pennsylvania, Connecticut, or any other state in the United States. *Id.* at ¶¶ 16-17. There is no basis on which to conclude that Emcure "is 'at home'" in the United States, let alone Pennsylvania. *DeGregorio*, 2017 WL 6367894, at *5 (holding that general jurisdiction could not be asserted over a large hotel chain that owned hundreds of hotels in Pennsylvania, because the chain was neither incorporated in, nor maintained its principal place of business, there).

Nor should the Court impute to Emcure the contacts of its indirect U.S. subsidiaries, Heritage and Heritage Pharma Labs, Inc. (formally known as Emcure USA) ("HPL"). Emcure Decl. at ¶¶ 8, 11. The jurisdictional contacts of its domestic subsidiaries can be imputed to Emcure

only if they are "so dominated" by Emcure as to render them Emcure's "alter ego." *Daimler*, 571 U.S. at 134-35.  But a "finding of alter ego jurisdiction is proper [only] where … corporate entities hold themselves out to the public as a single entity that is conveniently departmentalized either nationally or world-wide." *Flaccus v. Advanced Disposal Servs., Inc.*, C.A. No. 17-4808, 2018 WL 3731095, at *3 (E.D. Pa. Aug. 6, 2018).  That is not the case here.

Both Heritage and HPL manage their own respective operations, personnel, and marketing materials, and have empowered, functioning boards of directors.  *See* Emcure Decl. at ¶¶ 10-15; Heritage Decl. ¶¶ 14-18.  The U.S. subsidiaries and Emcure do not purport to "hold themselves out to the public as a single entity [] conveniently departmentalized."  *See Flaccus*, 2018 WL 373105, at *3.   To the contrary, each operates with substantial operational and financial independence, engaging in different aspects of the generic pharmaceuticals business, maintaining their own bank accounts, ANDAs, trade names, executives and personnel.  *See id.*; *see also* Emcure Decl. ¶¶ 10-15; Heritage Decl. ¶¶ 14-18.

"Pennsylvania courts consider ten discrete factors to assess the degree of control the in-forum corporation exercises over the related foreign corporation [in order to conduct an alter ego analysis]: (1) ownership of all or most of the stock of the subservient corporation; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subservient entity which the dominant corporation would normally conduct through its own agents or departments; (9) marketing by the subservient corporation on behalf of the dominant corporation, or as the dominant's exclusive distributor; and (10) receipt by the officers of the subservient corporation of

instruction from the dominant corporation." *Katz v. DNC Servs. Corp.*, C.A. No. 16-5800, 2017 WL 5885672, at *5 (E.D. Pa. Nov. 29, 2017).

Those factors counsel against the exercise of general jurisdiction over Emcure.  The entities do not utilize a common marketing image, trademark or logo, common use of employees, interchangeable managerial or supervisory personnel, or an integrated sales system.  Heritage does not conduct its business on behalf of Emcure, nor does Emcure dictate Heritage's prices or sales goals, or budgets.  *See* Emcure Decl. ¶¶ 23-25; Heritage Decl. ¶¶ 15-20.  Emcure is a legal entity separate and distinct from the subsidiaries.  *Compare* Emcure Decl. ¶ 3 *with* Heritage Decl. ¶ 3. All three entities maintain all of the customary corporate formalities, including maintenance of separate and functioning boards of directors and separate accounting and business records. Emcure Decl. ¶¶ 8-14; Heritage Decl. ¶ 9.  On those evidentiary facts, alter ego jurisdiction will not lie.  *See id.*; *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805–06 (3d Cir. 1981) (explaining that a "foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in the state"); *Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 424 (E.D. Pa. 2005) (finding no "alter ego" jurisdiction where complaint failed to allege supervision "greater than that normally associated with parent-subsidiary relationships"); *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997) (explaining that "alter ego" jurisdiction will lie only where there is such pervasive control by the parent such that the subsidiary "can [only] be said to be a mere department of [the parent]").

### b.    Mr. Mehta

Mr. Mehta is not domiciled anywhere in the United States, much less in this Commonwealth.  He resides in India.  *See* Mehta Decl. ¶ 6.  Mr. Mehta has never lived in the United States or owned real property here.  *Id.* ¶¶ 6-7.  Mr. Mehta was not served in Pennsylvania and has not consented to suit in Pennsylvania, or elsewhere in the United States.  As such, no basis

upon which to assert general jurisdiction over Mr. Mehta exists.  *See Farber*, 84 F. Supp. 3d at 434 (exercise of general jurisdiction is only proper "over a nonresident individual who (1) lives [in Pennsylvania], (2) was served [in Pennsylvania], or (3) consented to suit [in Pennsylvania]"); *see also Decker v. Dyson*, 165 Fed. App'x 951, 952 (3d Cir. 2006) (same).  In fact, both Emcure and Mr. Mehta were served under the Hague Convention as Plaintiffs knew neither was subject to service of process in the United States.

### 2.    The Complaint Does Not Allege a Basis on which to Exercise Specific Jurisdiction over Emcure or Mr. Mehta

The Complaint does not allege facts sufficient to show that Emcure and Mr. Mehta should be subject to specific personal jurisdiction for purposes of this action.  Proper exercise of specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Wilson v. RIU Hotels & Resorts*, C.A. No. 10-7144, 2011 WL 3241386, at *3 (E.D. Pa. July 29, 2011).  To establish a basis for specific jurisdiction, the Complaint must allege *facts* sufficient to support the conclusion that Emcure and Mr. Mehta "purposely availed" themselves of this forum.  Generic assertions expected to envelop all defendants—foreign and domestic—with widely varying (and in some cases at best tangential) allegations of conduct do not suffice to hail every party into this Court.  *See, e.g.*, *Copia Commc'ns, LLC v. AMResorts, L.P.*, C.A. No. 16-5575, 2017 WL 4012687, at *6 (E.D. Pa. Sept. 11, 2017) (holding that "perfunctorily argu[ing] that [defendant] has sufficient contacts with this Court [will not] support specific jurisdiction").

Rather, resolution of the purposeful availment test is contextual as to *each* defendant and requires the application of three distinct inquiries.  *Goodway Grp. v. Sklerov*, C.A. No. 18-0900, 2018 WL 3870132, at *4 (E.D. Pa. Aug. 15, 2018).  "First, the defendant must have 'purposefully directed [its] activities' at the forum[;] [s]econd, the litigation must 'arise out of or relate to' at

least one of those activities[;] [a]nd third, if the prior two requirements are met, a court [will] consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007); *see also Toussant v. Williams*, 62 F. Supp. 3d 417, 423 (E.D. Pa. 2014).

### a.    Emcure

Missing from the Complaint are *any* allegations that Emcure directed or conducted any of its activities to or in the United States.  Specifically, with regard to the first prong of the purposeful availment test, the Complaint neglects to "show that [Emcure] reached out beyond [its home forum] and create[d] continuing relationships and obligations with citizens of another." *Goodway Grp.*, 2018 WL 3870132, at *4 (internal quotation marks omitted).

The Complaint contends that "Emcure has marketed and sold generic pharmaceuticals in this District and throughout the United States."  CAC ¶ 30.  That allegation has no basis in fact and has now been rebutted by competent evidence.  *See* Emcure Decl. ¶¶ 8, 24; Heritage Decl. ¶ 19.  The Complaint does not adduce a single fact showing that Emcure purposefully availed itself of the privilege of conducting business in the United States by specifically targeting American residents and consumers.  *See Hlavac v. DGG Props.*, No. C.A. 04-6112, 2005 WL 839158, at *7 (E.D. Pa. Apr. 8, 2005) (holding that specific jurisdiction did not lie and explaining that a defendant must usually "target local residents before a court will conclude that the defendant purposefully availed itself of the privilege of conducting activities within the forum state.").  Instead, and as explained above, the Complaint alleges no more than that Emcure serves as a parent company to independent, indirect U.S.-based subsidiaries that conduct business in the United States.

Thus, the Complaint acknowledges that it was Heritage, not Emcure, that allegedly "wanted to make sure that Mylan was still committed" to the purported conspiracy, that it was

10

"Heritage's strategy and position … about [] Doxy DR in general" that drove the alleged conspirators' conduct, and that it was an "agreement between Mylan and Heritage" that affected the price of Doxy DR.  CAC ¶¶ 198-203.  In seeking to have the Court read "Emcure" every time the Complaint says "Heritage," Plaintiff States' flout both fundamental principles of fairness and the cardinal feature of corporate law "deeply ingrained in our economic and legal systems[,] that a parent corporation … is not liable for the acts of its subsidiaries."  *CMF Assocs., LLC v. Scout Media, Inc.*, C.A. No. 15-01250, 2015 WL 2125131, at *2 (E.D. Pa. May 6, 2015).  And it is now of record that the companies' operations are distinct, *see* Emcure Decl. ¶¶ 8-24; Heritage Decl. ¶¶ 13-18, and issues surrounding U.S. sales and pricing are commended to Heritage management.

The threadbare allegations related to Emcure *qua* Emcure in the Complaint do not show that it purposefully availed itself of the forum, making dismissal appropriate under Fed. R. Civ. P. 12(b)(2).  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (it must be established that the "defendant himself," and not a third party, create contacts with the state); *Goodway Grp.*, 2018 WL 3870132, at *4 (explaining that "Courts should be careful to avoid mistaking … [another] individual's, contacts with the out-of-state defendant for evidence of the defendant's reaching out into the forum.").

Even had the Complaint included factual allegations tending to show contacts between Emcure and the United States, it would still be subject to dismissal, because the causes of action asserted against Emcure do not arise out of, or relate to, any of Emcure's activities in the forum. *Copia Commc'ns,* 2017 WL 4012687, at *5; *In re Platinum & Palladium Antitrust Litig.*, No. 1:14-cv-9391-GHW, 2017 WL 1169626, at *44 (S.D.N.Y. Mar. 28, 2017) (no specific jurisdiction over U.K. corporation because plaintiffs did not sufficiently allege that any suit-related conduct occurred in the forum).  Specifically, the claims are not related to the design, manufacture, or

approval of Emcure's pharmaceutical products.   Rather, the allegations rest on Heritage's marketing and sale of products *at prices Heritage set independently of Emcure*.  *See* CAC ¶ 75; Emcure Decl. ¶ 23; Heritage Decl. ¶ 17.

The Complaint, boiled to its essence, grounds it claim to jurisdiction over Emcure (and Mr. Mehta) on *one* allegation.  One of two admitted liars and felons (Jeffrey Glazer or Jason Malek) apparently has claimed, without any corroboration or support, that there was a meeting with Mr. Mehta in India and that the discussion led to a call (the substance of which is not described at all) that led to a price change on a single product.  CAC ¶ 183.  That allegation, which is neither credible on its face nor tied to Emcure as a corporate entity, is insufficient to relate Emcure to the enormous, multi-year, multi-product "overarching" conspiracy the Complaint now posits.  It is the proverbial "slender reed" that cannot fairly bear the enormous weight of hauling Emcure into this Court.  *See Walden v. Fiore*, 571 U.S. 277, 286 (2014).  Put another way, "[s]pecific jurisdiction is the cost of enjoying the benefits [and protection of a specific forum]," and "[t]he relatedness requirement's function is to maintain balance in this reciprocal exchange" by "keep[ing] the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations."  *O'Connor*, 496 F.3d at 323.

Even if the Court reasonably could conclude that this single conversation (summarily and suspiciously described as it is) was somehow "related" to the sprawling conspiracy alleged, the exercise of personal jurisdiction over Emcure would not "comport with fair play and substantial justice."  *Id.* at 317.  The Third Circuit instructs district courts to be mindful of "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and [t]he procedural and substantive

interests of other nations" in considering what is "fair" and "just."  *Id.* at 324; *see also Burger King*, 471 U.S. at 477.  These factors further erode any basis for exercising personal jurisdiction over Emcure here.

The Supreme Court has recently held that "[t]he 'primary concern' in assessing [whether] personal jurisdiction is [fair] is the burden on the defendant."  *Bristol-Myers*, 137 S. Ct. at 1776.  As Emcure does not operate or have a presence in the United States, the burden of litigating this dispute in an American court is severe.  Emcure's representatives and personnel are located in Pune and other cities in India—nearly 8,000 miles away—and that is from where Emcure would need to manage this litigation.  Emcure Decl. ¶ 22.  Forcing Emcure to defend itself in a United States court against claims relating to one of its indirect subsidiaries' in-forum conduct flouts notions of fair play (especially when the subsidiary is before the Court already) and would impose burdens on Emcure that far outweigh the interests of the Plaintiffs.  *See Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders").  By contrast, dismissing Emcure as a defendant would not prevent Plaintiffs from adjudicating their claims or obtaining relief, as there is no dispute as to the Court's exercise of jurisdiction over Heritage—"a consistent participant in the conspiracies"—and other Defendants with which it allegedly conspired.  *See* CAC ¶ 11.

### b.  Mr. Mehta

For many of the reasons just discussed, Mr. Mehta is not subject to the exercise of specific personal jurisdiction in the United States.  At the threshold, the only pleaded connection between Mr. Mehta and the United States is the Complaint's bald assertion that his employer, Emcure,

maintained a wholly-owned subsidiary that "marketed and sold generic pharmaceuticals in th[e] District" of Pennsylvania. *See id.* at ¶ 32. Even if the Complaint's allegations were not severely lacking as to Emcure, corporate officers are shielded by a limitation on "the extent to which actions they performed in a corporate capacity may be used to exercise jurisdiction over them individually." *DaimlerChrysler Corp. v. Askinazi*, C.A. No. 99-5581, 2000 WL 822449, at *3 (E.D. Pa. June 26, 2000). Here, the Court would need to consider Mr. Mehta's role in Emcure's corporate structure, the nature and quality of Mr. Mehta's contacts with the United States, and the extent and nature of Mr. Mehta's personal participation in the alleged wrongdoing. *See Cerciello v. Canale*, 563 Fed. App'x 924, 928 (3d Cir. 2014). While Mr. Mehta is the CEO of Emcure, he is not an officer of and does not participate in the day-to-day activities of either of Emcure's subsidiaries. Mehta Decl. ¶¶ 4-5. As discussed above, Mr. Mehta maintains no jurisdictional ties to the United States.

The Complaint tries to have a single, opaque allegation (just analyzed in relation to Emcure) do double-duty. It bears repeating that *no* conduct is alleged to have occurred in the United States, and once again the Court has only the allegations of a professional prevaricator and admitted criminal and fraudster (Glazer or Malek) to rope Mr. Mehta into this case. A single person's uncorroborated recollection of a conversation with Mr. Mehta, that led to a later phone call (of which the source has no personal knowledge), that led supposedly to Mylan taking a later action with respect to one of the dozens of products at issue is not enough to make Mr. Mehta defend a multi-product, multi-year, all-encompassing conspiracy 8,000 miles from his office and home. *See* CAC ¶ 183 (alleging that Mr. Mehta met with Mr. Glazer in India).

Pieties aside, this is a shakedown—an attempt by Plaintiffs to find another deep pocket. Fairness and due process are a brake on exactly this type of overreaching, and the Court should

dismiss the Complaint in its entirety against Emcure and Mr. Mehta for want of personal jurisdiction.

### B. The Complaint Does Not Allege Facts Suggesting Emcure or Mr. Mehta Participated in the Alleged Conspiracies

#### 1. To Survive a Motion To Dismiss, the Complaint Must Allege Facts Sufficient To Support at Least a Reasonable Inference that Each Defendant Conspired

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it lacks enough substance to show that the plaintiff is entitled to relief. *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 435 (E.D. Pa. 2018). While the Court must accept *facts* alleged in a complaint as true, it is not bound to accept as true assertions that are not supported by facts. *Id.* at 438. Further, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). It "must plausibly suggest that the individual defendant actually joined and participated in the conspiracy" alleged. *In re Processed Egg Prods. Antitrust Litig.,* 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011); *see also Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 161 (D.D.C. 2004) (surviving motion to dismiss requires meeting "burden of adequately alleging that … each defendant knowingly joined or agreed to participate in the conspiracy"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("the complaint 'must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'") (quoting *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311–12 (D.N.J. 2004)). With respect to Emcure and Mr. Mehta, the Complaint does not meet this burden.

#### 2. The Complaint Does Not Allege Facts that Suggest that Emcure or Mr. Mehta Participated in the Alleged Doxy DR Conspiracy

The Complaint does not offer direct evidence that Emcure or Mr. Mehta joined the alleged

Doxy DR conspiracy.  Direct evidence, such as "a document or conversation explicitly manifesting the existence of the agreement in question" is "explicit and requires no inferences to establish the proposition or conclusion being asserted."  *In re Generic Pharm.*, 338 F.Supp.3d at 439.  The only facts alleged in the Complaint even potentially relevant to Emcure or Mr. Mehta's purported participation in a conspiracy are that long-terminated Heritage employees Malek and Glazer traveled to India in April 2013 to discuss Heritage's entry into the Doxy DR market, and that *three months after that meeting*, Mr. Mehta had a single telephone conversation with Mr. Malik of Mylan.  CAC ¶¶ 183, 198.  A visit of two Heritage managers to India to discuss business is hardly remarkable, given that Heritage is an Emcure subsidiary.  More to the point, the Complaint does not describe *at all* the contents of Mr. Mehta's call with Mr. Malik (a call that, it bears repeating, occurred months after the Heritage-Emcure meeting).  CAC ¶ 198.  The allegations cannot serve as direct evidence that either Emcure or Mr. Mehta entered into an agreement with Mylan to fix prices or allocate the market for Doxy DR.[4]

The only basis for a claim to lie against Emcure or Mr. Mehta, therefore, must be circumstantial evidence supporting a reasonable inference of conspiracy.  But the Complaint again is wanting.  To state a claim based on circumstantial evidence, the Complaint must plead parallel conduct amongst Emcure/Mehta and (presumably) Mylan, along with "plus factors" that "show that the allegedly wrongful conduct of the defense was conscious and not the result of independent business decisions."  *In re Generic Pharm.*, 338 F. Supp. 3d at 441.  The Third Circuit has recognized three such plus factors: "evidence (1) that the defendant had a motive to enter into a

---

[4] Although the Complaint alleges an agreement among Emcure, Mylan, and Heritage (CAC ¶ 217), the only agreement that even arguably could be actionable would be an agreement between Emcure and Mylan, as Emcure cannot conspire with its subsidiary.  *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).

conspiracy, (2) that the defendant acted contrary to its interests, or (3) implying a traditional conspiracy." *Lifewatch Servs. Inc. v. Highmark Inc.,* 902 F.3d 323, 333 (3d Cir. 2018). (internal quotation marks omitted).

The Complaint never crosses the threshold: it does not allege parallel conduct between Emcure (or Mr. Mehta) and Mylan. It does not even allege that Emcure manufactured or sold Doxy DR, such that it *could* engage in parallel conduct. Nor does the Complaint allege a single plus factor. At most, the Complaint claims that Emcure "benefited" from Heritage and Mylan's alleged Doxy DR agreement. CAC ¶ 499. But profit motive, especially one asserted as generally as the Complaint's unadorned "benefit" suggestion, "is not a plus factor establishing an agreement without further evidence of concerted, collusive conduct," which has not been alleged here. *See Lifewatch*, 902 F.3d at 335 n.7 (internal quotation marks omitted); *see also Baby Food*, 166 F.3d at 137 ("entrepreneurs have a legitimate understandable motive to increase profits.").

The Court cannot infer that Emcure and/or Mr. Mehta joined an alleged conspiracy to fix the price of Doxy DR based on the isolated allegation that Mr. Mehta had a single phone conversation with Mr. Malik in July 2013 *three months after* meeting with Heritage representatives. *See Ins. Brokerage*, 618 F.3d at 349 (mere opportunity to conspire does not plausibly suggest conspiracy). The Doxy DR conspiracy claim (Counts Five, Six and Nineteen) against Emcure and Mr. Mehta should be dismissed.[5]

---

[5] Plaintiffs' state law claims, which are based on the same alleged conduct as their Section 1 claim, should also be dismissed under Fed. R. Civ. P. 12(b)(6). *See, e.g. In re Suboxone Antitrust litig.*, 2017 WL 4642285, at * 12 (E.D. Pa. Oct. 17, 2017) ("[t]o the extent the state laws are commensurable with federal antitrust law and the Amended Complaint's allegations are insufficient to state a federal cause of action, the state law claims must also be dismissed").

3.      **The Complaint Does Not Allege Facts that Support a Reasonable Inference that Emcure Participated in the Alleged Overarching Conspiracy**

Given that Doxy DR is the *only* product that allegedly connects Emcure to this case, if the Court concludes that the Complaint does not state a claim against Emcure with respect to that product, it follows that Emcure cannot be roped into the alleged "overarching conspiracy."[6]  The States explicitly have conceded as much.  *See* Pls.' Joint Resp. in Opp'n to Defs.' Joint Mot. to Dismiss Pls.' Overarching Conspiracy Claims at 8, *In re Generic Pharm. Pricing Antitrust Litig.*, No. 18-cv-02641 (E.D. Pa. May 2, 2019), ECF No. 81 ("Joint Resp.").

In addition, and as described in Defendants' Memorandum in Support of Their Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims filed on February 21, 2019, incorporated by reference herein, the Complaint does not allege facts sufficient to convert Plaintiffs' claims about multiple, unrelated conspiracies regarding individual products into an overarching conspiracy targeting *all* of those products because the Complaint does not allege that each corporate Defendant knowingly entered into *that* overarching conspiracy.  Defs.' Mem. of Law in Supp. of Their Joint Mot. to Dismiss Pls.' Overarching Conspiracy Claims at 10-12, *In re Generic Pharm. Pricing Litig.*, No. 17-cv-03768, (E.D. Pa., Feb. 21, 2019), ECF No. 70-1; *see also, e.g.*, *In re: Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 979 (N.D. Iowa 2011) (holding individual guilty pleas while evidence of bilateral conspiracies did not suggest an overarching conspiracy); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*; No. 08-cv-42, 2011 WL 7053807, at *28 (E.D.N.Y. Jan. 4, 2011) (common defendant in each

---

[6] The Complaint does not assert an "overarching conspiracy" claim against Mr. Mehta.  *See* CAC ¶¶ 504; 506–11.

conspiracy was "not enough to demonstrate that the various local conspiracies were in fact part of an overarching global conspiracy.").

The Complaint also does not allege that Emcure had any connection at all with the purported overarching conspiracy.  The Complaint does not contain a single allegation regarding Emcure's generic drug portfolio and thus lacks a connection between Emcure and the linchpin assertion underlying the "overarching conspiracy" theory, namely that "[d]efendants are repeat players who have overlapping generic drug portfolios, with new generic drug markets opening as branded drugs fall off patent."  Joint Resp. at 2.  Plaintiffs themselves have deemed this assertion the "connective tissue" among Defendants that distinguishes the Complaint from the proposed "overarching conspiracy" complaint in *Auto Parts*.  *Id*. at 15.  But that "tissue" does not exist, even allegedly, as to Emcure.

The Complaint does not make up for this deficiency elsewhere.  It does not allege that Emcure engaged in more than discussions (much less actionable agreements) as to products other than Doxy DR, nor does it allege a single fact suggesting that Emcure even was aware of alleged agreements concerning other products.  *See id.* at 5 ("The Complaints also demonstrate sufficient overlap between the participants through their different combinations conspiring about different drugs."); *id*. at 8 (describing the "web-like overlap across the various specific-drug conspiracies").  Emcure is headquartered abroad; it does not do business in the United States, and it is not a member of any U.S. trade associations.  Emcure Decl. ¶ 3, 15–22.

The Complaint does not sufficiently allege that Emcure was party to, or even privy to, the "information exchange" and "web of connections" that led this Court to find a conspiracy involving the Group 1 Defendants.  *In re Generic Pharm.*, 338 F. Supp. 3d at 449–50, 453.

Plaintiffs' overarching conspiracy claim (Counts One through Four and Seven through Nineteen) against Emcure should be dismissed.

## V.      CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: May 31, 2019                                Respectfully Submitted,

                                                   **LATHAM & WATKINS LLP,**
                                                   *Attorneys for Defendants*
                                                   *Emcure Pharmaceuticals Ltd.*
                                                   *and Satish Mehta*

*/s/ Michael Lacovara*                            *s/ Marguerite M. Sullivan*
Michael Lacovara                                   Marguerite M. Sullivan
(NY Bar #2363448; CA Bar # 209279)                (DC Bar #497894)
Latham & Watkins LLP                               Latham & Watkins LLP
885 Third Avenue                                   555 Eleventh Street, N.W., Suite 1000
New York, NY 10022                                 Washington, D.C., 20004
(212) 906-1200                                     (202) 637-2200
michael.lacovara@lw.com                            marguerite.sullivan@lw.com


*/s/ Allyson M. Maltas*                           */s/ Elizabeth A. Parvis*
Allyson M. Maltas                                  Elizabeth A. Parvis
(DC Bar # 494566)                                  (NY Bar # 5503701)
Latham & Watkins LLP                               Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000              885 Third Avenue
Washington, D.C., 20004                            New York, NY 10022
(212) 906-1200                                     (212) 906-1200
allyson.maltas@lw.com                              elizabeth.parvis@lw.com