# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*STATE ATTORNEYS GENERAL LITIGATION* | HON. CYNTHIA M. RUFE<br><br>Civil Action No.<br><br>17-3768 |

## DEFENDANTS' REPLY
## IN SUPPORT OF THEIR JOINT MOTION TO
## <u>DISMISS PLAINTIFFS' STATE-LAW CLAIMS</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................2

I.   CERTAIN STATES LACK STANDING TO SUE ...............................................2

   A.   Colorado and New York Do Not Have Standing to Sue on Behalf of Governmental Entities. ...............................................................................2

   B.   Connecticut, Indiana, Maine, New Jersey, New Mexico, New York, North Carolina, and Tennessee Do Not Have Authority to Seek Damages on Behalf of Injured Citizens. .....................................................4

II.   CERTAIN STATES' CLAIMS FOR DAMAGES AND OTHER RELIEF ALSO FAIL. ....................................................................................................11

   A.   District of Columbia, Florida, Illinois, Indiana, Kansas, Maine, Massachusetts, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Puerto Rico, Tennessee, and West Virginia Failed to Identify a Single Governmental Entity on Whose Behalf They Bring Claims. .............................................................11

   B.   Alaska, Florida, Louisiana, Missouri, New Mexico, Puerto Rico, and Rhode Island Lack Standing to Bring Indirect-Purchaser Monetary Claims. .....................................................................................................14

      i.   Florida, Louisiana, and Puerto Rico are not Authorized to Bring Claims on Behalf of Indirect Purchasers ..................................... 14

      ii.   Alaska, Missouri, New Mexico, and Rhode Island's Consumer Protection Laws Allow them to Recover Restitution, Not Damages, on Behalf of Indirect Purchasers.................................. 18

   C.   Colorado, Connecticut, Delaware, Florida, Indiana, Louisiana, New Jersey, Ohio, Oklahoma, Puerto Rico, and Virginia Lack Standing to Bring Disgorgement Claims. ....................................................................20

III.   INDIANA, KENTUCKY, MAINE, MICHIGAN, SOUTH CAROLINA, AND WYOMING'S CONSUMER PROTECTION CLAIMS FAIL ...................20

   A.   Kentucky and South Carolina Are Not Entitled to Monetary Relief. ........20

   B.   The Consumer Protection Claims of Indiana, Maine, Michigan, and Wyoming Should Be Dismissed. .............................................................22

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
94 F. Supp. 3d 224 (D. Conn. 2015) ................................................................17

*Alaska v. Chevron Chem. Co.*,
669 F.2d 1299 (9th Cir. 1982) ..........................................................................2

*Alexander v. Bosch Auto. Sys.*,
232 Fed. App'x 491 (6th Cir. 2007) ................................................................19

*Alexander v. N.J. Power & Light Co.*,
122 A.2d 339 (N.J. 1956) ...................................................................................7

*Bd. of Comm'rs of Howard City v. Kokomo City Plan Comm'n*,
263 Ind. 282 (1975) .............................................................................................6

*Bd. of Comm'rs of Union City v. McGuiness*,
80 N.E.3d 164 (Ind. 2017) ................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................13, 14

*Brodsky v. Grinnell Haulers, Inc.*,
181 N.J. 102 (2004) .............................................................................................8

*California v. ARC America Corp.*,
490 U.S. 93 (1989) ...................................................................4, 7, 16, 20

*California v. Frito-Lay Inc.*,
474 F.2d 774 (9th Cir. 1973) ......................................................................4, 5

*California v. Infineon Techs. AG*,
531 F. Supp. 2d 1124 (N.D. Cal. 2007) .................................................4, 9, 10

*In re Cardizem CD Antitrust Litig.*,
391 F.3d 812 (6th Cir. 2004) ..........................................................................11

*Charter Commc'ns Entm't I, DST v. Burdulis*,
460 F.3d 168 (1st Cir. 2006) ............................................................................18

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) .......................................................23, 24

*Clark Oil & Ref. Corp. v. Ashcroft*,
   639 S.W.2d 594 (Mo. 1982) ...................................................................................4

*Commonwealth v. Marathon Petroleum Co., LLC*,
   No. 3:07CV00030KKC, 2007 WL 2900461 (E.D. Ky. Oct. 3, 2007) ......................................4

*In re D.C.*,
   679 A.2d 634 (N.J. 1996)........................................................................................7

*Devore v. City of Phila.*,
   No. 04-3030, 2005 WL 352698 (E.D. Pa. Feb. 11, 2005) ......................................18

*D.R. Ward Const. Co. v. Rohm and Haas Co.*,
   470 F. Supp. 2d 485 (2006) ...................................................................................12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007) ...........................3, 9, 12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   516 2d 1072, 1119-20 (N.D. Cal. 2007) .................................................................25

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304, 343 (D.N.J. 2014) .................................................................22

*F. Ray Moore Oil Co., Inc.*,
   80 N.C. App. 139 (1986) ......................................................................................10

*F.T.C. v. Indiana Fed'n of Dentists*,
   476 U.S. 447 (1986)..............................................................................................25

*F.T.C. v. Mylan Labs, Inc.*,
   99 F. Supp. 2d 1 (D.D.C. 1999) ....................................................................7, 16, 17

*Free v. Abbott Labs*,
   176 F.3d 298 (5th Cir. 1990) ...............................................................................15

*G.G. & Supp. Corp. v. S. & F. Sys., Inc.*,
   153 D.P.R. 861, 874 (P.R. 2001) ........................................................................17

*In re Generic Pharm. Pricing Antitrust Litig.*,
   368 F. Supp. 3d 814, 842 (E.D. Pa. 2019) ..........................................................25

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)..............................................................................................19

*Green v. Bock Laundry Mach. Co.*,
   490 U.S. 504 (1989)..............................................................................................16

iv

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
   995 F.2d 425 (3d Cir. 1993) ............................................................14, 15

*Harvey v. Blockbuster, Inc.*,
   384 F. Supp. 2d 749 (D.N.J. 2005) ...........................................................7

*Herrig v. Herrig*,
   844 P.2d 487 (Wyo. 1992) ......................................................................25

*Horvath v. Keystone Health Plan E., Inc.*,
   333 F.3d 450 (3d Cir. 2003) ...................................................................19

*Huizinga v. Genzink Steel Supply & Welding Co.*,
   No. 1:10-CV-223, 2013 WL 4511291 (W.D. Mich. Aug. 23, 2013) ......................19

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ........................................................................ *passim*

*State ex rel. Inman v. Brock*,
   622 S.W.2d 36 (Tenn. 1981) ...................................................................11

*In re K-Dur Antitrust Litig.*,
   No. 01-1652 (JAG), 2008 WL 2660783 (D.N.J. Mar. 19, 2008) ..........................24

*In re K-Dur Antitrust Litig.*,
   338 F. Supp. 2d 517 (D.N.J. Mar. 19, 2004) .........................................15

*Kansas v. UtiliCorp United*,
   497 U.S. 199 (1990) ...............................................................................15

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004) ...............................................................................22

*Lawson v. Hale*,
   902 N.E.2d 267 (Ind. Ct. App. 2009) .....................................................22

*State ex rel. Leech v. Levi Strauss & Co.*,
   No. 79-722-III, 1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) .....................10

*Lexmark Int'l, v. Static Control Components*,
   572 U.S. 118 (2014) ...............................................................................13

*In re Lipitor Antitrust Litig.*,
   336 F. Supp. 3d 395, 423 (D.N.J. 2018) ...............................................23

*In re Lorazepam & Clorazepate Antitrust Litig*,
   205 F.R.D. 369 (D.D.C. 2002) ............................................................10, 11

v

*Mack v. Bristol-Myers Squibb Co.*
   673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ............................................................14

*MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*,
   512 U.S. 218 (1994) .............................................................................................16

*Neese v. State*,
   218 P.3d 983 (Alaska 2009), *as amended on reh'g* (Nov. 20, 2009) ...................19

*New Mexico v. Scott & Fetzer Co.*,
   No. 81-cv-054, 1981 WL 2167 (D.N.M. Dec. 22, 1981) .......................................8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) .....................................................................23

*New York v. Cedar Park Concrete Corp.*,
   665 F. Supp. 238 (S.D.N.Y. 1987) ...................................................................2, 12

*In re Nexium Esomeprazole Antirust Litig.*,
   968 F. Supp. 2d 367 (D. Mass. 2013) ..................................................................17

*State ex rel Nixon v. Am. Tobacco Co.*,
   34 S.W.3d 122 (Mo. 2000) ...................................................................................19

*State ex rel. Nixon v. Consumer Auto. Res., Inc.*,
   882 S.W.2d 717 (Mo. Ct. App. 1994) ...................................................................20

*In re Opana ER Antitrust Litig.*,
   162 F. Supp. 3d 704, 723 (N.D. Ill. 2016) ...........................................................17

*P.R. Fuels, Inc. v. Empire Gas Co.*,
   149 D.P.R. 691 (P.R. 1999) ..................................................................................17

*Pac. Gas & Elec. Co. v. Cty. of Stanislaus*,
   16 Cal. 4th 1143 (1997) .........................................................................................2

*In re Packaged Seafood Prod. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) ..............................................................24,

*People v. Liberty Mut. Ins.*,
   861 N.Y.S.2d 294 (2008) ........................................................................................9

*In re Polyurethane Foam Antitrust Litig.*,
   799 F. Supp. 2d 777 (N.D. Ohio 2011), *clarified on denial of reconsideration*,
   No. 10 MD 2196 (JZ), 2011 WL 13133853 (N.D. Ohio July 27, 2011) ...............24

*Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.*,
   137 P.R. Dec. 497 (1994) .....................................................................................17

*In re Processed Egg Prods. Antitrust Litig.*,
   851 F. Supp. 2d 867 (E.D. Pa. 2012) ....................................................................25

*Rivera-Muniz v. Horizon Lines, Inc.*,
   737 F. Supp. 2d 57 (D.P.R. 2010) ........................................................................17

*New York ex rel. Schneiderman v. Intel Corp.*,
   No. 09-827-LPS, 2011 WL 6100446 (D. Del. Dec. 7, 2011) ..................................9

*Sims v. New Penn Fin. LLC*,
   No. 3:15-CV-263, 2016 WL 558920 (N.D. Ind. Feb. 12, 2016) ............................22

*State v. First Nat. Bank of Anchorage*,
   660 P.2d 406 (Alaska 1982)................................................................................19

*State v. Health*,
   806 S.W.2d 535 (Tenn. Ct. App. 1990) ...............................................................11

*State v. Marsh & McLennan*,
   944 A.2d 315 (Conn. 2008) .............................................................................5, 6

*State v. Polley*,
   2 S.W.3d 887 (Mo. Ct. App. 1999).....................................................................20

*U.S. ex rel. Taylor v. Gabelli*,
   No. 03 CIV 8762 (PAC), 2005 WL 2978921 (S.D.N.Y. Nov. 4, 2005).................18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 11-00711 SI, 2011 WL 3475408 (N.D. Cal. Aug. 2011) ..............................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   787 F. Supp. 2d 1036 (N.D. Cal. 2011) .........................................................12, 15

*Tungate v. MacLean-Stevens Studios*, Inc.,
   714 A.2d 792 (Me. 1998).................................................................................23, 24

*State ex rel. Webster v. Areaco Inv. Co.*,
   756 S.W.2d 633 (Mo. Ct. App. 1988)...................................................................20

**Statutes**

Alaska Stat. § 45.50.501(b)...................................................................................18

Conn. Gen. Stat. § 35-32(c) ..............................................................................5, 6

Conn. Gen. Stat. § 35-32(c)(2)................................................................................6

F.S.A. § 542.18 ....................................................................................................15

Ind. Code § 24-1-1-2 ...........................................................................................................6

Ind. Code § 24-1-2-5 ...........................................................................................................6

Ind. Code § 24-5-0.5-3(b) ..................................................................................................22

Ky. Rev. Stat. Ann. § 367.190(1) ......................................................................................21

Ky. Rev. Stat. Ann. § 367.200 ...........................................................................................21

Ky. Rev. Stat. Ann. § 367.220(1) ......................................................................................21

Ky. Rev. Stat. Ann. § 367.990 ...........................................................................................21

Ky. Rev. Stat. Ann. § 367.990(2) ......................................................................................21

La. Rev. Stat. § 51:137 .......................................................................................................16

Mich. Comp. Laws. § 445.903 ...........................................................................................24

Mich. Comp. Laws. § 445.910 ...........................................................................................24

Mo. Rev. Stat. § 407.100(4) ...............................................................................................18

N.C. Gen. Stat. § 75-15 ......................................................................................................10

N.C. Gen. Stat. § 75-16 .................................................................................................10, 11

N.C. Gen. Stat. § 114-2(8)(a) .............................................................................................10

N.J. Stat. Ann. § 56: 9-12(b) ...............................................................................................8

N.J. Stat. Ann. § 56: 9-18 ....................................................................................................7

N.M. Stat. Ann. § 8-5-2 .......................................................................................................9

N.M. Stat. Ann. § 57-1-3(B) ...............................................................................................9

N.M. Stat. Ann. § 57-1-15 ...................................................................................................9

N.M. Stat. Ann. § 57-12-8(B) .......................................................................................18, 20

N.Y. Exec. Law § 63(12) .................................................................................................2, 3

N.Y. Gen. Bus. Law § 342-b ............................................................................................3, 4

R.I. Gen. Laws § 6-13.1-5(c) ........................................................................................18, 20

S.C. Code Ann. § 39-5-50(a) .............................................................................................21

S.C. Code Ann. § 39-5-50(b) ........................................................................................21

S.C. Code Ann. § 39-5-110 ...........................................................................................21

S.C. Code Ann. § 39-5-140(a) .......................................................................................21

Tenn. Code Ann. § 8-6-109 ...........................................................................................11

Wyo. Stat. § 40-12-105 .................................................................................................25

**Other Authorities**

Fed. R. C. P. 8 ..........................................................................................................13,

Fed. R. C. P. 9(a)(1)(B) .................................................................................................12

Fed. R. C. P. 9(a)(2) ......................................................................................................12

## INTRODUCTION

The plaintiffs (collectively, the "States" or "Plaintiffs") resist dismissal of their supplemental state-law claims by generally claiming that (1) they "properly pled. . .claims for public entities;" (2) they "can represent consumers under state law;" and (3) "state law allows for 'indirect' purchaser recovery."  States' Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss States' State-Law Claims (Dkt. 169, "Opp. Br.") at 1.  The States' arguments, however, cannot defeat Defendants' Motion (Dkt. 157, "Motion") and this Court must dismiss the state-law claims addressed in that Motion for lack of standing or failure to state a claim.

*First*, certain States lack the authority to pursue the claims alleged in the Consolidated Amended Complaint (Dkt. 14, the "CAC").  Specifically, New York and Colorado lack standing to sue on behalf of governmental entities; therefore, their claims involving such entities must be dismissed.  Connecticut, Indiana, Maine, Missouri, New Jersey, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Tennessee, Wisconsin, and Wyoming are not authorized to seek damages as *parens patriae*.  To the extent that each State is seeking *parens patriae* damages, those claims must be dismissed.

*Second*, certain States' claims for damages and other relief on behalf of governmental entities and indirect purchasers must be dismissed because they fail to identify any governmental entity that has suffered harm.[1]  Further, because the States sue as indirect purchasers, those States without laws repealing *Illinois Brick* cannot seek damages.[2]  Several of the States' laws limit the available remedy to injunctive relief: those States are also not entitled to damages.

---

[1] The District of Columbia, Florida, Illinois, Indiana, Kansas, Maine, Massachusetts, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Puerto Rico, Tennessee, and West Virginia all seek damages on behalf of unidentified government entities.

[2] Alaska, Colorado, Connecticut, Delaware, Florida, Indiana, Louisiana, Missouri, New Mexico, Ohio, Oklahoma, Puerto Rico, Rhode Island, and Virginia all seek damages on behalf of indirect purchasers without legal authority.

1

*Third*, certain state-law consumer protection claims must be dismissed because the underlying statute either does not authorize the State to seek the requested relief or does not prohibit the alleged conduct.

The States' failures to offer more than vague and generalized allegations are not simply minor pleading deficiencies.  Each of these flawed claims represents an attempt to seek relief in excess of limits imposed by state legislatures, and they should not be permitted to proceed.  For the reasons set out in Defendants' Memorandum of Law in Support of their Joint Motion to Dismiss Plaintiffs' State-Law Claims (Dkt. 157-1, "Defs.' J. Mem.") and in this brief, the state-law claims discussed below should be dismissed with prejudice.

## ARGUMENT

## I.   CERTAIN STATES LACK STANDING TO SUE

### A.   Colorado and New York Do Not Have Standing to Sue on Behalf of Governmental Entities.

A state has standing to seek relief on behalf of governmental entities only to the extent that the state's law permits.  *See Alaska v. Chevron Chem. Co.*, 669 F.2d 1299, 1302 (9th Cir. 1982); *New York v. Cedar Park Concrete Corp.*, 665 F. Supp. 238, 241 (S.D.N.Y. 1987); *Pac. Gas & Elec. Co. v. Cty. of Stanislaus*, 16 Cal. 4th 1143, 1149 (1997).  Because the state antitrust laws of Colorado and New York do not authorize those States' Attorneys General to sue on behalf of governmental entities, those States cannot pursue such claims.  Colorado now concedes that it is not asserting claims on behalf of any governmental entity.  Opp. Br. at 4.  While New York continues to assert claims on behalf of government entities, its claims similarly fail.

New York argues that it has statutory authority under both the N.Y. Exec. Law § 63(12) and the Donnelly Act to bring claims on behalf of governmental entities.  Opp. Br. at 4.  Neither law, however, vests the State Attorney General with authority to bring representative claims on

2

behalf of *unnamed* governmental entities.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2007 WL 2517851, at *7, *9 (N.D. Cal. Aug. 31, 2007) (explaining that both N.Y. Exec. Law § 63(12) and "the Donnelly Act contemplates that these government entities must be specifically identified").

The Donnelly Act limits the Attorney General to bringing actions on behalf of a New York "political subdivision or public authority" only if it does so at the request of that entity. N.Y. Gen. Bus. Law § 342-b.  Although New York's precise allegations are unclear, Plaintiffs contend that New York is also seeking remedies on behalf of "non-state public entities," Opp. Br. at 4, in addition to (or perhaps in lieu of) any "political subdivision or public authority." New York fails to explain what, if any, overlap between "non-state public entities" and "political subdivision[s] or public authority" exists.  Either way, New York's allegations fail to meet the applicable pleading requirements.  New York law *requires* the Attorney General to identify the state entity on whose behalf she seeks remedies and, to the extent that she seeks remedies on behalf of a "political subdivision or public authority," must further plead that the entity has made a specific request for the Attorney General to bring suit.  *See In re DRAM Antitrust Litig.*, 2007 WL 2517851, at *7 (dismissing New York's antitrust claims, explaining that "while the Donnelly Act does provide express statutory authority for the State Attorney General to sue on behalf of 'any political subdivision or public authority of the state,' the Donnelly Act contemplates that these government entities must be *specifically identified*, and it must affirmatively be *demonstrated* that they have requested that the Attorney General bring suit on their behalf." (emphasis added)).  Nowhere in the CAC or the Opposition Brief does New York

meet either requirement.[3]   New York filed this claim nearly two years ago and still has not identified a single specific government agency on whose behalf it claims damages.  Accordingly, New York's claims fail and must be dismissed with prejudice.

### B.   Connecticut, Indiana, Maine, New Jersey, New Mexico, New York, North Carolina, and Tennessee Do Not Have Authority to Seek Damages on Behalf of Injured Citizens.[4]

Because States' common-law *parens patriae* authority does not specifically authorize the collection of damages, courts require specific authorization under state law before allowing a State to seek damages on behalf of injured citizens.  *See, e.g.*, *California v. Frito-Lay Inc.*, 474 F.2d 774, 777 (9th Cir. 1973); *Clark Oil & Ref. Corp. v. Ashcroft*, 639 S.W.2d 594, 596 (Mo. 1982); *Commonwealth v. Marathon Petroleum Co., LLC*, No. 3:07CV00030KKC, 2007 WL 2900461, at *4 (E.D. Ky. Oct. 3, 2007); *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1164-65 (N.D. Cal. 2007).[5]   The States' characterization of Defendants' discussion of certain federal law precedent is largely irrelevant.[6]   Although the States claim that the court in *Frito-Lay*

---

[3] New York contends – without support in either case law or pleaded facts – that the "request requirement in section 342-b applies only to non-state public entities, not the state itself."  Opp. Br. at 4.  New York, however, has failed to specify on whose behalf it is seeking damages and essentially asks the Court to assume that it has standing to sue on the unknown entity's behalf.  As detailed in Section I.A, this is precisely why New York is required to identify the government entity on whose behalf it seeks damages at the pleadings stage versus the discovery stage.

[4] Defendants withdraw their arguments with respect to Arkansas' antitrust and consumer protection claims, as well as the antitrust laws of Rhode Island and Alaska.

[5] The States incorrectly contend that *Infineon* stands for the proposition that no express authorization is needed to sue for damages in a *parens patriae* capacity.  However, in that case, Judge Hamilton adopted *Frito-Lay's* general reasoning and held that State Attorneys General need express authorization to *bring parens patriae* claims and "where there exists controlling legal authority *specifically indicating* that monetary damages…may be sought through a *parens patriae* claim, the court will presume such authority to be present…[w]here no such authority exists, however, the court will not make the same presumption."  *Infineon Techs.*, 531 F. Supp. 2d at 1165-64 (emphasis added).

[6] The States rely on *California v. ARC America Corp.*, 490 U.S. 93 (1989), in support of their argument that all states claiming *parens patriae* damages are authorized to do so.  Opp. Br. at 5-6.  *ARC America* held only that states may enact laws authorizing the Attorney General to bring claims behalf of its citizens in a *parens patriae* capacity even when federal law would not permit such a claim.  The states discussed below have not authorized their Attorneys General to bring such claims, and thus those states are not authorized to sue for damages in a *parens*

"considered *parens* authority under federal antitrust law not *state* antitrust law," Opp. Br. at 6, the court ruled on the nature of *parens patriae* standing without invoking a distinction between state and federal law.  In sum, the States fail to provide a principled reason to ignore that case's careful and thoughtful analysis.

The States concede that North Dakota, Pennsylvania, Wisconsin, and Wyoming are not bringing *parens patriae* claims.  The remaining States fail to demonstrate that their respective statutes authorize them to pursue *parens patriae* damages on behalf of allegedly injured citizens.

***Connecticut:*** State law refutes Connecticut's argument that it need not distinguish between its claims for injuries to the State's general economy and injuries to persons.  *See* Opp. Br. at 8.  The statute plainly states that, if the Attorney General brings an action as "parens patriae with respect to damages to the general economy of the state or any political subdivision thereof," "such damages shall not be duplicative of those recoverable" as "parens patriae for persons residing in the state."  Conn. Gen. Stat. § 35-32(c).  Connecticut in seeking *parens patriae* damages both for its general economy *and* on behalf of individual Connecticut citizens, Opp. Br. at 21, n.16, is clearly violating the Connecticut statute.  Accordingly, Connecticut's claims for damages as *parens patriae* must be dismissed.[7]

Connecticut also erroneously argues that *State v. Marsh & McLennan*, 944 A.2d 315 (Conn. 2008), supports its position that there is no need to distinguish between *parens patriae* and general economic damages at the pleading stage.  Opp. Br. at 9.  In that case, the plaintiff claimed general economic damages and *parens patriae* damages under different theories.  *Id*. at 327-28.  The defendants argued that those damages were not factually distinguishable. The court

---

*patriae* capacity under their own state law.   Accordingly, the States' point that *ARC America* "rejected arguments that federal antitrust policies limit state law," Opp. Br. at 6, is wholly irrelevant here.

[7] If Connecticut is permitted to re-assert a *parens patriae* claim for damages, it must claim either general economic damages or damages on behalf of individual Connecticut citizens, not both.  Conn. Gen. Stat. § 35-32(c).

found that the plaintiff had adequately pleaded distinct damages theories, and the factual accuracy of the plaintiff's distinction theory was not appropriate for the pleading stage. *Id.*

Unlike the plaintiff in *Marsh & McLennan*, who pleaded separate and distinct theories for *parens patriae* and general economic damages, Connecticut's damages theories are based on identical allegations and lumped together without any effort to distinguish them. CAC at ¶ 608 (vaguely alleging that Defendants' actions damaged "the economic well being of a substantial portion of the People of the State of Connecticut and its citizens and businesses at large" and seeking "recovery of such damages as parens patriae on behalf of the State of Connecticut *and* the People of the State of Connecticut pursuant to Conn. Gen. Stat. § 35-32(c)(2)" (emphasis added)). Because those damages, as alleged, *cannot* be separated or proven distinct, the claim for *parens patriae* damages must be dismissed as duplicative pursuant to Conn. Gen. Stat. § 35-32(c).

*Indiana:* No Indiana statute provides the Attorney General with *parens patriae* standing to pursue damages claims on behalf of citizens. Neither statute cited by Indiana is relevant. Ind. Code § 24-1-2-5 provides, rather, for "proceedings to prevent and restrain," and does not mention damages. And Ind. Code § 24-1-1-2 merely states that it is "the duty of the attorney general of the state to enforce this section by due process of the law" and does not authorize a *parens patriae* claim for damages. *See* Opp. Br. at 10. The case that Indiana cites, *Bd. of Comm'rs of Howard City v. Kokomo City Plan Comm'n*, 263 Ind. 282, 295 (1975), Opp. Br. at 9, discusses case law recognizing *parens patriae* standing generally – but not for damages.[8] The States' contorted reading of Indiana law does not change the fact that Indiana is not authorized to seek *parens patriae* damages, and its *parens patriae* claims must be dismissed.

---

[8] Further, the citation to *Bd. of Comm'rs of Union City v. McGuiness*, 80 N.E.3d 164, 170 (Ind. 2017) is merely a reference back to *Kokomo* on the same point.

***Maine:*** Maine cites a federal district court case that relies on state case law authorizing limited *parens patriae* authority only when Maine has its own direct interest in the litigation. *F.T.C. v. Mylan Labs, Inc.*, 99 F. Supp. 2d 1, 7 (D.D.C. 1999) ("[T]he State must show a direct interest of its own and not merely seek recovery for the benefit of individuals who are the real parties in interest").  Given that requirement, the court wrote that "[i]t is difficult to see why Maine has an independent state interest in this action when the goals of compensation and deterrence can already by achieved" by a private right of action.  *Id.*  The same rationale is applicable here – Maine seeks *parens patriae* relief but lacks an independent state interest in the action, and any interest that it has as *parens patriae* can already be achieved by the existing class actions in this case.  Accordingly, Maine's *parens patriae* claims must fail.

***New Jersey:***  New Jersey fails to cite a single case discussing its *parens patriae* authority to seek damages.  Instead, it cites irrelevant cases dealing with New Jersey's *parens patriae* authority for relief other than damages.  Opp. Br. at 11 (citing *In re D.C.*, 679 A.2d 634, 643 (N.J. 1996) (analyzing the source of *parens patriae* authority in the context of authority to seek involuntary commitment, not damages); *Alexander v. N.J. Power & Light Co.*, 122 A.2d 339, 343 (N.J. 1956) (analyzing whether a utility company could be held liable for the expenses of temporary counsel); *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 751 (D.N.J. 2005) (analyzing whether a suit brought by the Attorney General seeking civil penalties and permanent injunction was subject to laws governing class actions)).  New Jersey also argues that N.J. State. Ann. § 56:9—18 must be construed coextensively with judicial interpretations of federal enforcement authority under the Sherman Act. Opp. Br. at 11.  This argument is nonsensical.  The States argue that federal remedies "supplement [but do] not displace, state antitrust remedies."  Opp. Br. at 5 (quoting *California v. ARC America Corp.*, 490 U.S. 93, 101-02

(1989)).    They cannot have it both ways; once the State legislature has chosen to adopt its own antitrust law, the plain language of the statute prevails: "The Attorney General, *on behalf of the State or any of its political subdivisions or public agencies*, . . . may institute an action to recover . . . damages . . ." N.J. Stat. Ann. § 56: 9-12(b) (emphasis added).    If the New Jersey legislature had intended to give New Jersey authority to seek damages in a *parens patriae* context, it would have done so. *See Brodsky v. Grinnell Haulers, Inc.*, 181 N.J. 102, 112 (2004) ("The canon of statutory construction, *expression unius est exclusion alterius* – expression of one thing suggests the exclusion of another left unmentioned").    Because New Jersey is not authorized to bring a *parens patriae* claim for damages, its unauthorized claims must be dismissed.

**New Mexico:** Plaintiffs argue that the authority cited in Defs.' J. Mem. "overlooks a suite of statutory provisions that give the New Mexico Attorney General the power to seek damages on behalf of the State's residents." Opp. Br. at 12.    None of those provisions, however, actually provide the Attorney General with authority to seek damages on behalf of private citizens.[9]    The case cited by Plaintiffs, *New Mexico v. Scott & Fetzer Co.*, No. 81-cv-054, 1981 WL 2167 (D.N.M. Dec. 22, 1981), was a declaratory judgment action, not a damages action, and was brought under the Sherman Act, not the New Mexico statute.

The statutes and case law relied upon by Plaintiffs "say nothing of the Attorney General's ability to bring a *parens patriae* suit for damages on behalf of natural persons, and set forth only the generic proposition that the Attorney General is, in fact, vested with *parens patriae*

---

[9] N.M. Stat. Ann. § 8-5-2 is a general provision setting out the "duties" of the Attorney General, which gives the Attorney General authority to "prosecute and defend" actions on behalf of the state and to appear in court when the "public interest of the state requires such action."    It does not relate to antitrust law and it does not grant *parens patriae* authority for damages claims under New Mexico's antitrust law or any other law.    N.M. Stat. Ann. § 57-1-3(B) allows the Attorney General to bring suit "on behalf of the state, a political subdivision thereof or any public agency."    Notably, the provision does not allow the Attorney General to sue on behalf of citizens. N.M. Stat. Ann. § 57-1-15 simply provides that "the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws," but makes no mention of *parens patriae* suits.

authority." *Infineon Techs. AG*, 531 F. Supp. 2d at 1168.  Thus, New Mexico's unauthorized *parens patriae* damages action must be dismissed.[10]

**New York:**  New York incorrectly asserts that it can seek monetary damages as *parens patriae* under the Donnelly Act.  Opp. Br. at 13.  In doing so, New York largely disregards *In re DRAM Antitrust Litig.*, which explains that "the [New York] legislature knew how to include language granting the Attorney General the right to sue 'in behalf of the people of the state' in the [Donnelly] Act's damages relief provision. . .[and] the legislature's failure to include [such] language in the provision authorizing damages suits was deliberate." 2007 WL 2517851, at *8.  To the extent that New York does address *DRAM*, it claims that the *Liberty Mutual* case makes *DRAM* irrelevant here, but that assertion is inaccurate.

Plaintiffs' reliance on *People v. Liberty Mutual Insurance Co.*, No. 2008-03972, 2008 WL 5934817 (N.Y. App. Div. Apr. 2, 2008) is misplaced.  Numerous federal courts have adhered to *DRAM* after *Liberty Mutual* was decided.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-00711 SI, 2011 WL 3475408, at *6 (N.D. Cal. Aug. 2011); *New York ex rel. Schneiderman v. Intel Corp.*, No. 09-827-LPS, 2011 WL 6100446, at *4 (D. Del. Dec. 7, 2011).  Indeed, in rejecting New York's reliance on *Liberty Mutual*, the courts in both *TFT-LCD* and *Schneiderman* noted that "Liberty Mutual's treatment of the issue is 'exceeding[ly] brief' and 'does not discuss what relief would be available' in a *parens patriae* damages suit on behalf of individuals." *Schneiderman*, 2011 WL 6100446, at *4 (quoting *TFT-LCD,* No. C 11-00711 SI, 2011 WL 3475408, at *6)).

---

[10] New Mexico makes a claim similar to New Jersey's — that its statutes should be interpreted coextensively with federal law.  But again, if the New Mexico legislature intended to grant New Mexico authority to seek *parens patriae* authority, it would have done so.

Accordingly, New York does not have the authority to bring *parens patriae* suits for damages and its claims for such must be dismissed.

***North Carolina:*** Similar to New Mexico, the statutes relied on by North Carolina do not authorize its Attorney General to seek damages as *parens patriae*. *See* N.C. Gen. Stat. § 75-15 (allowing the Attorney General to "prosecute such an action in the name of the State"); N.C. Gen. Stat. § 114-2(8)(a) (authorizing the Attorney General to "institute and originate proceedings," but conferring no authority to seek damages in *parens patriae* actions). Although North Carolina claims to seek "damages on behalf of the agencies injured by Defendants' anticompetitive behavior under N.C. Gen. Stat. § 75-16," Opp. Br. at 15, the CAC is devoid of any reference to that statute. *See* CAC ¶¶ 772—83. Moreover, N.C. Gen. Stat. § 75-16 is inapposite; it provides that "[i]f any person shall be injured or the business of any shall be injured. . . such person, firm or corporation so injured shall have a right of action on account of such injury." The State is not a "person, firm or corporation," and N.C. Gen. Stat. § 75-16 is silent as to the ability of North Carolina's Attorney General to bring a claim for damages.[11] North Carolina's inadequately pleaded *parens patriae* damages claims must be dismissed.

***Tennessee:*** Tennessee asks the Court to ignore relevant state case law holding that *parens patriae* damages claimed on behalf of individual citizens constitute "a drastic departure from accepted practice" in Tennessee. *State ex rel. Leech v. Levi Strauss & Co.*, No. 79-722-III,

---

[11] The two cases North Carolina cites are equally unpersuasive. First, the court in *In re Lorazepam & Clorazepate Antitrust Litigation,* without any analysis or context, held that North Carolina had authority to settle consumers' state antitrust claims. 205 F.R.D. 369 (D.D.C. 2002). This decision did not find that North Carolina had *parens patriae* authority, but rather only held that it had the functional equivalent of *parens patriae* authority in the limited context at issue. *See id.* at 386; *Infineon Techs. AG*, 531 Supp. 2d at 1165 ("[This case] . . .deal[s] with the ability of State Attorneys General to settle and release parens patriae claims on behalf of consumers, not the ability of State Attorneys General to bring parens patriae claims for damages on behalf of consumers"). Second, *F. Ray Moore Oil Co., Inc. v. State* holds that pursuant to N.C. Gen. Stat. § 75—16 North Carolina can sue when the State as a consumer has been the victim of an unfair or deceptive trade practice, but it says nothing about whether the State can sue on behalf of consumer citizens of the State. 80 N.C. App. 139, 142 (1986) ("There is no reason why the State *as a consumer* cannot take advantage of N.C. Gen. Stat. § 75—16 (emphasis added)).

1980 WL 4696, at *5 (Tenn. Ch. Sept. 25, 1980).  Instead, Tennessee points to a single, non-binding federal decision that upheld a district court's imposition of an appeal bond and that mentioned, but did not review, a district court's conclusion that the State had the *parens patriae* authority it sought on the facts of that case. *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 814 (6th Cir. 2004). Tennessee also cites *In re Lorazepam & Clorazepate Antitrust Litig.,* but that case only addressed whether Tennessee had authority to settle a claim on behalf of Tennessee consumers, not its ability to bring *parens patriae* claims for damages.[12]  205 F.R.D. 369 (D.D.C. 2002).  Neither case establishes Tennessee's authority to sue for damages as *parens patriae*.  Therefore, its damages claims must be dismissed.

## II.   CERTAIN STATES' CLAIMS FOR DAMAGES AND OTHER RELIEF ALSO FAIL.

### A.   District of Columbia, Florida, Illinois, Indiana, Kansas, Maine, Massachusetts, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Puerto Rico, Tennessee, and West Virginia Failed to Identify a Single Governmental Entity on Whose Behalf They Bring Claims.

Several states seek damages on behalf of governmental entities but refuse (or are unable) to identify any such entity that has suffered harm.  Not only does this fly in the face of clear authority requiring this identification at the outset of a case, but it also prejudices Defendants and leaves them with no effective notice of the scope of the States' claims.  In their Opposition Brief, these States claim that they are not required to identify any of the governmental agencies on whose behalf they are seeking damages at the pleading stage, and that they will address that issue in discovery.  That position reverses the normal requirements of litigation (first identify a claim,

---

[12] Moreover, the statute and case law cited by the court in that decision make no reference to *parens patriae* standing.  *See*  Tenn. Code Ann. § 8-6-109; *State v. Health*, 806 S.W.2d 535 (Tenn. Ct. App. 1990); *State ex rel. Inman v. Brock*, 622 S.W.2d 36 (Tenn. 1981).

then litigate it) and contradicts relevant precedent.[13]  *See Cedar Park Concrete Corp.*, 665 F.
Supp. at 242  ("[i]n view of the need early in the litigation to identify State-affiliated purchasers,
we believe the complaints should be dismissed insofar as they purport to state treble damages
claims on behalf of unidentified state subdivisions."); *In re DRAM Antitrust Litig.*, 2007 WL
2517851, at *6 ("plaintiff's failure to allege either that the government entities in question
requested that plaintiff bring suit on their behalf, or to name or identify the government entities
in question, means that plaintiff's representative claim on behalf of those government entities
must be dismissed insofar as the Donnelly Act is concerned").[14]

The States also misconstrue the meaning of Rule 9(a)(1)(B) of the Federal Rules of Civil
Procedure.  While Rule 9(a)(1)(B) does not require the States to allege their *authority* to sue in a
representative capacity, Rule 9(a)(1)(B) does not excuse the States' failure to *identify* the
governmental entities on whose behalf they claim damages.[15]

---

[13] The States claim that *In re TFT-LCD (Flat Panel) Antitrust Litig.* supports their assertion that they need not
identify any of the government entities for which they claim damages, but the States in that case *did* identify many
of the government entities for which they claimed damages ("[T]he States assert that 'all or nearly all of the
identities of the state agencies and other governmental entities for which damages are sought by the States have
already been disclosed.'").  787 F. Supp. 2d at 1039.

[14] The States cite *D.R. Ward Const. Co.* in support of their argument that they need not identify the government
entities on whose behalf they claim damages, Opp. Br. at 4, n.6, but that case does not address the issue.  470 F.
Supp. 2d 485, 502 (E.D. Pa. 2006).  The States quote that court's holding that the plaintiffs alleged "a sufficient
causal nexus between the injury and defendants' alleged anti-competitive behavior."  *Id.*  But that case did not
address a failure to identify the government entities on whose behalf the plaintiffs sought damages, or even a failure
to identify alleged victims more generally.  Rather, it addressed whether the plaintiffs pleaded sufficient factual
allegations to demonstrate that, upon discovery, they could "present a reliable method of identifying the effects of
the price fixing."  *Id.* at 505.  Rather than address the shortcomings of their pleadings, particularly their failure to
identify the allegedly injured parties for which they seek damages, the States choose instead to misdirect the court
by focusing on an entirely different element of the CAC: causation.

[15] The States' mischaracterization is apparent when considering Rule 9(a)(2), which explains that certain issues may
be raised by a "specific denial," including the issue of whether the plaintiff has the authority to sue on behalf of a
third party.  If the language of Rule 9(a)(1)(B) meant that plaintiffs need not identify the party on whose behalf they
sue (as the States claim), Rule 9(a)(2) would make little sense, since it would be impossible to specifically deny that
the plaintiff has authority to sue on a party's behalf—or that the party on whose behalf the plaintiff is suing suffered
a legally cognizable injury—without any indication of that party's identity.

The United States Constitution and Rule 8 of the Federal Rules of Civil Procedure both require plaintiffs to identify the injured party for whom damages are claimed.  To establish Article III standing, a plaintiff must allege "a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant."  *Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 125 (2014).  The States cannot establish that the claims made on behalf of government entities are "particularized" without identifying the particular government entities that were allegedly injured.  Nor can their vague allegations be considered "fairly traceable" to Defendants, because an injury cannot be traced without some indication of the injured party's identity.  Further, Rule 8 establishes that a plaintiff must "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  By refusing to provide information as to which government entities were allegedly injured or the transactions that allegedly injured them, the States deprive the Defendants of the "fair notice" required by law.

Moreover, the States' assertion that they need not identify the government entities that they allege incurred damages until the discovery stage blatantly ignores Supreme Court authority requiring the averment of facts establishing a plaintiff's right to recover.  "Something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people."  *Id.* at 558-59 (citations omitted).  The *Twombly* plaintiffs asserted that their claims would be substantiated through discovery, but the Court determined that the case could not proceed to discovery because "[f]actual allegations [at the pleading stage] must be enough to raise a right to relief above the speculative level."  *Id.* at 545.  The same rule applies to the States' vague and speculative allegations of injuries to unspecified government entities.  Without identifying the allegedly injured party or the

transaction(s) that form the basis for their allegations, the States' claims are merely speculative. As stated by the Supreme Court, that "basic deficiency should. . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558.  Accordingly, the States' claims for damages on behalf of unidentified government entities must be dismissed.

### B.   Alaska, Florida, Louisiana, Missouri, New Mexico, Puerto Rico, and Rhode Island Lack Standing to Bring Indirect-Purchaser Monetary Claims.

Plaintiffs concede that many States do not seek damages on behalf of indirect purchasers. Opp. Br. at 21.[16]  The remaining States are only able to seek relief as indirect purchasers if their respective state laws grant them the ability to do so.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Despite their assertions to the contrary, certain States do not have standing to bring indirect-purchaser claims for monetary relief.

### i.   Florida, Louisiana, and Puerto Rico are not Authorized to Bring Claims on Behalf of Indirect Purchasers

*Florida:* As explained in *Mack v. Bristol-Myers Squibb Co.*, the Florida legislature has not adopted an *Illinois Brick* repealer.  673 So. 2d 100, 103 (Fla. Dist. Ct. App. 1996). Therefore, indirect purchaser claims are not cognizable under Florida law.

Florida also claims that it is a direct purchaser based on alleged assignments from Cardinal Health to Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP") and from MMCAP to Florida.  Florida's allegations of assignment, however, fail under *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 440 (3d Cir. 1993).  In that case, the court explained that permitting a plaintiff to bring a third-party's specific antitrust claims

---

[16] "California, Connecticut, Delaware, New Jersey, Ohio, Oklahoma, and Virginia are not asserting claims for damages on behalf of 'indirect' purchasers."  Opp. Br. at 21.  Indiana also concedes that it is not asserting indirect-purchaser monetary claims on behalf of individuals.  Opp. Br. at 23.  To the extent that Indiana seeks indirect damages on behalf of government entities, it has not identified any specific government entity on whose behalf those damages are sought.  As explained in Section II.A, *supra*, failure to identify the party on whose behalf damages are sought is a fatal defect that must result in dismissal of the claim.

based on a generalized assignment of claims from that third party would be "'an unwanted and counterproductive exercise [of litigating] a series of exceptions' to the direct purchaser rule." (quoting *Kansas v. UtiliCorp United*, 497 U.S. 199, 217 (1990)).  Accordingly, a plaintiff may only bring an antitrust claim pursuant to a purported assignment of that claim from a third-party if the assignment is specific and express.  *Id*.  Florida asserts that it "has pled detailed facts that it holds an express assignment of antitrust claims from MMCAP" in paragraph 641 of the CAC.  Opp. Br. at 22.  These so-called "detailed facts" merely state that Cardinal Health has assigned all of its antitrust claims to MMCAP, and "Florida . . . has a similar assignment from MMCAP for *any* claims MMCAP may have for violations of the antitrust laws."  CAC at ¶ 641 (emphasis added).  The assignment of "any" antitrust claim is the epitome of a general assignment, especially when those claims are assigned from one third-party to another, and then from the third-party assignee to the plaintiff.  Such generalized implied assignments are not a valid method of assigning antitrust claims.

Florida failed to adequately allege claims on behalf of either direct or indirect purchasers.  Accordingly, these claims must be dismissed.  *Gulfstream*, 995 F. 2d at 440; *see also* F.S.A. § 542.18.[17]

***Louisiana:***  Louisiana acknowledges that its courts have not authorized standing for indirect purchasers, Opp. Br. at 23, and that the Fifth Circuit has determined that Louisiana law does not allow indirect purchaser actions for damages.  *Free v. Abbott Labs*, 176 F.3d 298, 299

---

[17] Florida quotes *In re TFT-LCD*, 787 F. Supp. 2d at 1041 and *In re K-Dur*, 338 F .Supp. 2d 517 (D.N.J. March 19, 2004) to support its argument, Opp. Br. at 22, but those cases addressed whether the plaintiffs' claims should be dismissed because they did not provide enough detail about the agreements that assigned the claims being brought.  Florida's claim fails for a different reason: as pleaded, they are precisely the type of generalized and attenuated assignments that the *Gulfstream* court condemned as loopholes used in an attempt to get around *Illinois Brick's* prohibition on indirect purchaser claims.

(5th Cir. 1990).  That should end the debate.  Nonetheless, Louisiana urges this court to disregard that Fifth Circuit precedent and instead adopt the wholly unsupported assertion that the general language of La. Rev. Stat. § 51:137 authorizes indirect purchaser standing.  La. Rev. Stat. § 51:137 creates a private right of action under Louisiana antitrust laws generally, but does not authorize indirect purchaser standing in any way.  *Illinois Brick* established that indirect purchasers do not, absent specific authorization to the contrary, have standing to bring antitrust claims.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  That rule has been widely recognized for more than 40 years; to read the generalized language of La. Rev. Stat. § 51:137 as a specific legislative authorization to the contrary would be to infer a fundamental change in the law from a general provision that the legislature never intended to be so construed.  The Supreme Court has repeatedly condemned such inferences.  *See, e.g.*, *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 234 (1994) (finding that general statutory language cannot be interpreted to authorize "fundamental changes" in a legislative scheme).  As the Supreme Court has stated, "[a] party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change."  *Green v. Bock Laundry Mach. Co*., 490 U.S. 504, 521 (1989).  Louisiana's vague and unsupported assertions fall far short of meeting that burden here, particularly in light of its candid admission that its own courts have not authorized such actions.

Louisiana also relies on *California v. ARC America Corp*., 490 U.S. at 93, but that case does not support the States' arguments.  Rather, *ARC America* simply held that *Illinois Brick* does not preempt a state's ability to enact and enforce its own antitrust laws.  *F.T.C. v. Mylan*

*Labs*., 99 F. Supp. 2d at 4.  Louisiana has not enacted any law to abrogate *Illinois Brick*, thus, *ARC America* is inapplicable here.[18]

      ***Puerto Rico:*** Plaintiffs argue that Puerto Rico is not limited by *Illinois Brick*, and Puerto Rico may sue on behalf of indirect purchasers.  Opp. Br. at 25.  Plaintiffs do so despite the absence of any *Illinois Brick* repealer legislation or specific authorization for Puerto Rico to pursue damages for indirect purchases.  The two Puerto Rico cases Plaintiffs cite as "controlling" have nothing to do with the question at issue – whether Puerto Rico law allows for the Attorney General to seek damages for indirect purchasers.  *See G.G. & Supp. Corp. v. S. & F. Sys., Inc*., 153 D.P.R. 861, 874 (P.R. 2001) (concerning applicability of per se and rule of reason categories); *P.R. Fuels, Inc. v. Empire Gas Co*., 149 D.P.R. 691 (P.R. 1999) (concerning contribution under Puerto Rico antitrust law).  Plaintiffs cite just one federal district court decision allowing indirect purchaser damages, *Rivera-Muñiz v. Horizon Lines, Inc*., 737 F. Supp. 2d 57 (D.P.R. 2010).  That decision, however, was based on a faulty application of precedent.[19]  Further, it has since been repeatedly rejected by multiple subsequent federal courts, which have found that Puerto Rico law precludes indirect purchaser damages.  *See In re Aggrenox Antitrust Litig*., 94 F. Supp. 3d 224, 252 (D. Conn. 2015) (dismissing indirect purchaser claims under Puerto Rico law, rejecting *Rivera-Muñiz*); *In re Nexium Esomeprazole Antirust Litig*., 968 F. Supp. 2d 367, 410 (D. Mass. 2013) (same); *In re Opana ER Antitrust Litig*., 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016) (same). Puerto Rico's antitrust damages claims must be dismissed.

---

[18] Notably, the Connecticut Attorney General that initiated this litigation has testified before Congress that Louisiana does not permit indirect purchaser standing.  *Testimony of Attn'y Gen. George Jepsen Before the S. Judiciary Comm. on H.B. 5252*, 115th Cong., at 4 (2018) (map showing each state's treatment of indirect purchaser standing and labeling Louisiana as having "no indirect purchaser standing"), *available at* https://bit.ly/2m1FHXM.

[19] Specifically, the decision relied on by *Rivera-Muñiz* turned on an issue of causation, and whether Puerto Rico law required proof of antitrust injury; it did not concern indirect purchaser standing.  *See Pressure Vessels of P.R., Inc. v. Empire Gas de P.R*., 137 P.R. Dec. 497 (1994).

> ii. *Alaska, Missouri, New Mexico, and Rhode Island's Consumer Protection Laws Allow them to Recover Restitution, Not Damages, on Behalf of Indirect Purchasers*

Plaintiffs argue that the consumer protection laws of Alaska, Missouri, New Mexico, and Rhode Island explicitly allow those States to recover damages on behalf of indirect purchasers. Opp. Br. at 7-8, 10-13, 24-27. That is incorrect. Those statutes provide for *restitution*, not damages.[20] There are fundamental differences between the two remedies.

First, the remedies serve different purposes: "Damages typically focus on the plaintiff and provide 'make-whole,' compensatory, monetary relief; restitution, by contrast, concentrates on the defendant – preventing unjust enrichment, disgorging wrongfully held gains, and restoring them to the plaintiff." *U.S. ex rel. Taylor v. Gabelli*, No. 03 CIV 8762 (PAC), 2005 WL 2978921, at *4 (S.D.N.Y. Nov. 4, 2005); *see also Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 182 (1st Cir. 2006) ("[T]he damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep."); *see also Devore v. City of Phila.*, No. 04-3030, 2005 WL 352698, at *3 (E.D. Pa. Feb. 11, 2005) (distinguishing economic damages from restitution, "restitution, on the

---

[20] Alaska's consumer protection statute, the Alaska Unfair Trade Practices and Consumer Protection Act ("AUTPA"), provides that the "[t]he court may make additional orders or judgments that are necessary to *restore to any person* in interest any money or property, real or personal, which may have been acquired by means of an act or practice declared to be unlawful by [AUTPA]." Alaska Stat. § 45.50.501(b) (emphasis added). The Missouri Merchandising Practices Act ("MMPA"), provides that the "court, in its discretion, may enter an order of restitution, payable to the state, as may be necessary to *restore to any person* who has suffered any ascertainable loss, including, but not limited to, any moneys or property, real or personal, which may have been acquired by means of any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter." Mo. Rev. Stat. § 407.100(4) (emphasis added). New Mexico's Unfair Practices Act allows the Attorney General to "petition the district court for temporary or permanent injunctive relief and *restitution*." N.M. Stat. Ann. § 57-12-8(B) (emphasis added). Rhode Island's Deceptive Trade Practices Act likewise allows the court issuing an injunction to "make any additional orders or judgments that may be necessary to *restore to any person* in interest any moneys … that may have been acquired by means of any practice in this chapter declared to be unlawful." R.I. Gen. Laws § 6-13.1-5(c) (emphasis added).

18

other hand, is based on the concept of preventing unjust enrichment. . . Restitution is a principle of quasi-contract designed to effect fairness and equity where a benefit has been unjustly conferred" (internal citations omitted)).

A second "difference between restitution and money damages is that restitution involves repayment of 'particular and traceable funds,' while money damages are typically paid out of a 'general fund.'" *Huizinga v. Genzink Steel Supply & Welding Co.*, No. 1:10-CV-223, 2013 WL 4511291, at *7 (W.D. Mich. Aug. 23, 2013), quoting *Alexander v. Bosch Auto. Sys.*, 232 F. App'x 491, 501 (6th Cir. 2007); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) ("a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"); *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 457 n.3 (3d Cir. 2003) (same).  Plaintiffs seeking restitution "have the burden of establishing that the funds they seek are traceable and readily identifiable." *Alexander*, 232 F. App'x at 501.

The consumer protection statutes of Alaska, Missouri, New Mexico, and Rhode Island provide for restitution of particular and traceable funds, not damages.  Therefore, to the extent that these states seek damages under their consumer protection laws, those claims must be dismissed.[21]  And, as they do not allege that the funds they seek are traceable and readily identifiable, their restitution claims must also be dismissed.

---

[21] Plaintiffs cite various cases and statutory provisions in support of their argument that Alaska, Missouri, New Mexico, and Rhode Island allow their Attorneys General to bring claims for money damages.  But those cases and statutes make clear that the Attorneys General are limited to remedies of restitution rather than damages.  *See Neese v. State*, 218 P.3d 983, 988 (Alaska 2009), *as amended on reh'g* (Nov. 20, 2009) (addressing the court's power to order restitution for individuals under the Alaska Unfair Trade Practices and Consumer Protection Act); *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412 (Alaska 1982) (noting the court's ability to "award restitutory relief"); *State ex rel Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 129 - 30 (Mo. 2000) (noting that the Missouri

C.      **Colorado, Connecticut, Delaware, Florida, Indiana, Louisiana, New Jersey, Ohio, Oklahoma, Puerto Rico, and Virginia Lack Standing to Bring Disgorgement Claims.**

As Defendants' Joint Motion to Dismiss Plaintiffs' Federal Law Claims for Lack of Standing highlights, the disgorgement claims of the States that follow the *Illinois Brick* rule should be dismissed.  Dkt. 74-1 at 5-7; Defs.' J. Mem. at 9, n. 33.  Plaintiffs' citation to *ARC America Corp.*, 490 U.S. 93 (1989), Opp. Br. at 28, is irrelevant because this Motion addresses the States' inability to seek various forms of relief under their respective state's laws, not federal antitrust law.  For those States whose laws adhere to *Illinois Brick's* bright-line rule against monetary relief for indirect purchasers, disgorgement is unavailable as a form of relief under those state laws.

## III.    INDIANA, KENTUCKY, MAINE, MICHIGAN, SOUTH CAROLINA, AND WYOMING'S CONSUMER PROTECTION CLAIMS FAIL

### A.      Kentucky and South Carolina Are Not Entitled to Monetary Relief.

Contrary to Plaintiffs' mischaracterization of Kentucky and South Carolina law, the Attorneys General of those States are not entitled to bring claims for damages under their respective consumer protection statutes.  Plaintiffs misrepresent the statutory language in their attempt to argue that these statutes explicitly give Attorneys General a cause of action for damages.  For example, Kentucky's statute does not actually state that the "*Attorney General* may seek 'orders or judgments . . . to restore to any person in interest any moneys . . . which may have been paid out as a result of any practice'" declared to be unlawful by the statute.  Opp. Br.

---

Attorney General may seek injunctive relief or restitution); *State ex rel. Nixon v. Consumer Auto. Res., Inc.*, 882 S.W.2d 717, 721 (Mo. Ct. App. 1994) (listing restitution as a potential remedy); *State v. Polley*, 2 S.W.3d 887, 891 (Mo. Ct. App. 1999) (noting that the court has discretion to "enter an order of restitution"); *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 637 (Mo. Ct. App. 1988) (same); N.M. Stat. Ann. § 57-12-8(B) (allowing for restitution under the New Mexico Unfair Practices Act); R.I. Gen. Laws § 6-13.1-5(c) (noting the court's power to order restitution for violations of the Rhode Island Deceptive Trade Practices Act).

at 28 (emphasis added).  Rather, the quoted provision states only that "[t]he *court* may make such additional orders or judgments. . . ."  Ky. Rev. Stat. Ann. § 367.200 (emphasis added). Thus, the statute does not authorize the Kentucky Attorney General to seek monetary relief – it merely permits the court to issue orders for monetary relief.  Similarly, South Carolina's statute does not state that the "Attorney General may seek 'additional orders or judgments,'" as Plaintiffs claim.  Opp. Br. at 28.  The statute states only that "[t]he *court* may make such additional orders or judgments . . . ."  S.C. Code Ann. § 39-5-50(b) (emphasis added).

While Kentucky and South Carolina's consumer protection statutes expressly allow individual consumers to bring actions for damages, they include no such provisions with respect to their Attorneys General.[22]  The statutes state only that the Attorneys General may bring claims for injunctive relief.[23]  *See* Ky. Rev. Stat. Ann. § 367.190(1) ("[T]he Attorney General . . . may move . . . for a restraining order or temporary or permanent injunction"); S.C. Code Ann. § 39-5-50(a) ("[T]he Attorney General . . . may bring an action in the name of the State against such person to restrain by temporary restraining order, temporary injunction or permanent injunction").  *See Infineon Techs. AG*, 531 F. Supp. 2d at 1170 ("[T]o the degree that the Attorney General may proceed under SCUTPA in a parens patriae capacity on behalf of natural persons . . . he may only do so in order to seek injunctive relief, not damages").  And, when a legislature "includes particular language in one section of a statute but omits it in another section

---

[22] Kentucky's statute states, "any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss . . . may bring an action . . . to recover action damages."  Ky. Rev. Stat. Ann. § 367.220(1).  South Carolina's statute similarly states, "Any person who suffers any ascertainable loss of money or property . . . may bring an action individually . . . to recover actual damages." S.C. Code Ann. § 39-5-140(a).

[23] While it is true that the Kentucky and South Carolina Attorneys General may seek civil penalties, those civil penalties are restricted to willful violations.  *See* Ky. Rev. Stat. Ann. § 367.990; S.C. Code Ann. § 39-5-110.  And the Kentucky Attorney General may only seek civil penalties after bringing a successful action for injunctive relief. *See* Ky. Rev. Stat. Ann. § 367.990(2).

of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004). Despite the plain language of those statutes, Plaintiffs attempt to assert causes of action for damages where none exist. As Plaintiffs' Response demonstrates, there are no corresponding provisions authorizing the Attorneys General to bring claims for damages. Accordingly, Plaintiffs' claims for damages under Kentucky and South Carolina consumer protection law must be dismissed.

To the extent that Plaintiffs cite cases authorizing recovery of restitution under Kentucky's consumer protection statutes, those statutes are inapplicable. As addressed previously in Section II.B.ii, damages are not coextensive with restitution: the authorization of restitution does not also authorize the recovery of damages.

### B.   The Consumer Protection Claims of Indiana, Maine, Michigan, and Wyoming Should Be Dismissed.

Plaintiffs' claims under the state consumer protection laws of Indiana, Maine, Michigan, and Wyoming also fail because these laws do not forbid the conduct as alleged in the CAC.

*Indiana:* Plaintiffs fail to cite a single case supporting their argument that the Indiana Deceptive Consumer Sales Act ("IDCSA") governs anticompetitive conduct. Instead, Plaintiffs argue that the prohibited conduct listed in Section 24-5-0.5-3(b) of the IDCSA is not exhaustive. However, "a plaintiff's allegations must fit into one of the enumerated acts proscribed under the [IDCSA]." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 343 (D.N.J. 2014); s*ee also Lawson v. Hale*, 902 N.E.2d 267, 274 (Ind. Ct. App. 2009). While Plaintiffs contend that the IDSCA was amended in July 2014 to prohibit implicit misrepresentations, they have failed to "allege any act that could be construed as a deceptive act under the statute." *Sims v. New Penn Fin. LLC*, No. 3:15-CV-263, 2016 WL 558920, at *8 (N.D. Ind. Feb. 12, 2016) (holding that there can be no

IDCSA violation in the absence of such an allegation, and noting that plaintiffs' allegation of an "implied promise" was insufficient to constitute a deceptive act). Here, Plaintiffs' allegations are based on supposedly anticompetitive behavior, not fraudulent or deceptive conduct.

Furthermore, to the extent Plaintiffs' claims are based on allegations that occurred before July 2014, there is no dispute that prior to that date, an IDSCA claim required an express misrepresentation. *See* Opp. Br. at 29. Therefore, Plaintiffs essentially concede that any IDCSA claim based on pre-July 2014 conduct must be dismissed.

***Maine:*** Plaintiffs also fail to state a claim under the Maine Unfair Trade Practices Act ("MUTPA"), which does not contemplate price fixing absent allegations of "unfair or deceptive acts." Although Plaintiffs point to one case, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.* ("*NMV*"), 350 F. Supp. 2d 160 (D. Me. 2004), that held that price fixing could still fall within the MUTPA as "unfair methods of competition," Opp. Br. at 30, other federal courts have consistently held otherwise. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 423 (D.N.J. 2018) (noting that "federal courts have criticized the rationale in [*NMV*]" and dismissing the plaintiffs' MUTPA claim premised on anticompetitive conduct). Federal courts have declined to adopt the approach of the court in *NMV*, recognizing that Maine case law, expressly holds that conduct leading to higher prices has to change consumer conduct (*i.e.*, actually deceive consumers) in order to constitute a MUTPA violation. *See In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 585 n.59 (M.D. Pa. 2009) ("A pricing claim under the MUTPA therefore requires proof that the defendant induced consumers to alter their behavior to their detriment. Except in unusual circumstances, higher prices do not induce consumers to purchase products."). These courts have squarely addressed and rejected *NMV*'s misguided interpretation of the MUTPA and, *Tungate v. MacLean Stevens Studios, Inc.*, 714

A.2d 792 (Me. 1998).  *See In re Chocolate*, 602 F. Supp. 2d at 585 n.59. ("The court declines to adopt NMV's construction of *Tungate*."); *see also In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1075-76 (S.D. Cal. 2017); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 787 (N.D. Ohio 2011), *clarified on denial of reconsideration*, No. 10 MD 2196 (JZ), 2011 WL 13133853 (N.D. Ohio July 27, 2011).  Accordingly, Plaintiffs' allegations of price fixing are insufficient to state a MUTPA claim and its MUTPA claim must be dismissed.

*Michigan:* In support of their argument that the Michigan Consumer Protection Act ("MCPA") encompasses the allegations in the CAC, Plaintiffs rely solely on a single provision of the statute.  But that section of the MCPA applies only to class actions, as reflected by its title: "Class actions by attorney general . . . ."  Mich. Comp. Laws. § 445.910.  The provision further states, "[t]he attorney general may bring a *class action* on behalf of persons residing in or injured in this state for the actual damages caused by . . . [a] method, act, or practice" declared to be "an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the federal trade commission act."  *Id.* (emphasis added).   Because this is not a class action, Section 445.910 has no relevance here.  The MCPA is a narrowly circumscribed statute that does not encompass price fixing allegations.  *See* Defs.' J. Mem. at 11; *see also In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d at 1076; *In re K-Dur Antitrust Litig.*, No. 01-1652 (JAG), 2008 WL 2660783, at *9 (D.N.J. Mar. 19, 2008) (declining to permit a MCPA claim where the allegations did "not fall within any of the categories of prohibited conduct enumerated in the MCPA").  Plaintiffs do not assert that price fixing falls within the "[u]nfair, unconscionable, or deceptive methods, acts, or practices" defined in Section 445.903 of the MCPA.  Accordingly, their MCPA claim must be dismissed.

*Wyoming:* Plaintiffs go to great lengths in an attempt to distinguish *Herrig v. Herrig*, 844 P.2d 487 (Wyo. 1992). Opp. Br. at 31-32. However, in doing so, they gloss over the underlying problem with their claim under Wyoming's Consumer Protection Act ("WCPA"): that law applies to a range of specific actions, and price fixing or market allocation are not on that list. *See* Wyo. Stat. § 40-12-105.[24] Nor has any Wyoming court ever applied the WCPA to alleged claims of price fixing or market allocation. For that reason, multiple federal courts have dismissed claims brought under the WCPA for alleged antitrust conduct.[25] *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 2d 1072, 1119-20 (N.D. Cal. 2007) ("In the court's view, the Wyoming Supreme Court would be of a similar mind set here, and if given the opportunity, would hold that plaintiffs' claim pursuant to the WCPA, which is based on allegations of antitrust violations, is not cognizable under the statute. The WCPA is targeted at 'unscrupulous and fraudulent marketing practices' that are distinguishable from allegations of antitrust violations"). This Court should do likewise, and dismiss Wyoming's claim.

## CONCLUSION

For the reasons set out in Defs.' J. Mem. and the foregoing reasons, Defendants respectfully request that the Court dismiss certain of the States' state-law antitrust and consumer-protection claims with prejudice.

---

[24] By contrast, the Federal Trade Commission ("FTC") Act is a highly general statute, and courts have adopted a correspondingly broad interpretation of "unfairness." *See F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454 (1986) ("The standard of unfairness under the [FTC] Act, 15 U.S.C.S. § 45, is by necessity, an elusive one"). The FTC Act (and the Florida analogue at issue in *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 900 (E.D. Pa. 2012)), could not be more different from Wyoming's CPA, which is highly specific in the conduct it is aimed to prevent.

[25] Plaintiffs argue that the WCPA should be interpreted in accordance with the FTC Act. Opp. Br. at 33. But the cases they cite in support of that argument are inapposite, as they do not address Wyoming law. *See Processed Egg Prods.*, 851 F. Supp. 2d at 900; *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. at 454 (1986); *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 842 (E.D. Pa. 2019).

Dated: September 6, 2019

Respectfully submitted,

| | |
|---|---|
| */s/ Benjamin F. Holt* | */s/ Sheron Korpus* |
| Adam K. Levin | Sheron Korpus |
| Benjamin F. Holt | Seth A. Moskowitz |
| Justin W. Bernick | KASOWITZ BENSON TORRES LLP |
| HOGAN LOVELLS US LLP | 1633 Broadway |
| 555 Thirteenth Street, NW | New York, NY 10019 |
| Washington, D.C. 20004 | Tel: (212) 506-1700 |
| Tel: (202) 637-5600 | Fax: (212) 506-1800 |
| Fax: (202) 637-5910 | skoipus@kasowitz.com |
| adam.levin@hoganlovells.com | smoskowitz@kasowitz.com |
| benjamin.holt@hoganlovells.com | |
| justin.bernick@hoganlovells.com | *Counsel for Actavis Pharma, Inc., Actavis* |
| | *Holdco U.S., Inc.* |
| *Counsel for Defendant Mylan* | |
| *Pharmaceuticals, Inc.* | |

*/s/ James W Matthews*
James W. Matthews
Katy E. Koski
John F. Nagle
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Tel: (414) 271-2400
Fax: (414) 297-4900
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5644
Fax: (215) 832-5644
THenry@blankrome.com
MCarter@blankrome.com

*Counsel for Defendant Apotex Corp.*

*/s/ W Gordon Dobie*
W. Gordon Dobie
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
WDobie@winston.com

*/s/ Irving Wiesen*
Irving Wiesen
LAW OFFICES OF IRVING L. WIESEN,
   P.C.
420 Lexington Avenue - Suite 2400
New York, NY 10170
Tel: (212) 381-8774
Fax: (646) 536-3185
iwiesen@wiesenlaw.com

*Counsel for Defendant Ascend Laboratories,
   LLC*

*/s/ Wayne A. Mack*
Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemonis.com

*Counsel for Defendant*
  *Aurobindo Pharma USA, Inc.*


*/s/ Steven E. Bizar*
Steven E. Bizar
John P. McClam
Tiffany E. Engsell
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
steven.bizar@dechert.com
john.mcclaim@dechert.com
tiffany.engsell@dechert.com

*Counsel for Defendant Citron Pharma LLC*

*/s/ Jason R. Parish*
Jason R. Parish
Bradley J. Kitlowski
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW
Washington, D.C. 20006
Tel: (202) 452-7900
Fax: (202) 452-7989

*Counsel for Defendant Zydus*
  *Pharmaceuticals (USA), Inc.*


*/s/ Roger Kaplan*
Roger Kaplan
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel: (973) 360-7900
Fax: (973) 295-1257
kaplanr@gtlaw.com
varmostranda@gtlaw.com

*Counsel for Defendant Dr. Reddy's*
  *Laboratories, Inc.*

/s/ J. Gordon Cooney, Jr.
J. Gordon Cooney, Jr.
John J. Pease, III
Alison Tanchyk
William T. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

/s/ Jan P. Levine
Jan P. Levine
Robin P. Sumner
Michael J. Hartman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
levinej@pepperlaw.com
sumnen@pepperlaw.com
hartmanm@pepperlaw.com

*Counsel for Defendant*
*Teva Pharmaceuticals USA, Inc.*

/s/ Saul P. Morgenstern
Saul P. Morgenstern
Margaret A. Rogers
ARNOLD & PORTER KAYE SCHOLER
   LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
saul.morgenstern@arnoldporter.com
margaret.rogers@arnoldporter.com

Laura S. Shores
ARNOLD & PORTER KAYE SCHOLER
   LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
laura.shores@arnoldporter.com

*Counsel for Defendant Sandoz Inc.*

*/s/ Steven A. Reed*
Steven A. Reed
R. Brendan Fee
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com

Andrew S. Wellin
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6154
Fax: (212) 309-6001
andrew.wellin@morganlewis.com

*Counsel for Defendant*
  *Glenmark Pharmaceuticals Inc., USA*

*/s/ Edward B. Schwartz*
Edward B. Schwartz, Esq.
Jennifer M. Driscoll, Esq.
Andrew C. Bernasconi, Esq.
REED SMITH LLP
1301 K Street NW
Suite 1000-East Tower
Washington, DC 20005
Tel: (202) 414-9232
Fax: (202) 414-9299
eschwartz@reedsmith.com
jdriscoll@reedsmith.com
abernasconi@reedsmith.com

William J. Sheridan, Esq.
Courtney B. Averbach, Esq.
REED SMITH LLP
Reed Smith Centre
225 Fifth Ave.
Pittsburgh, PA 15222
Tel: (412) 288-3131
Fax: (412) 288-3063
wsheridan@reedsmith.com
caverbach@reedsmith.com

*Counsel for Defendant Heritage*
  *Pharmaceuticals Inc.*

/s/ John E. Schmidtlein
John E. Schmidtlein
Sarah F. Teich
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
steich@wc.com

*Counsel for Defendant*
  *Par Pharmaceutical Companies, Inc.*

/s/ Gerald E. Arth
Gerald E. Arth
Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 299-2000
Fax: (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com

George G. Gordon
Stephen D. Brown
Julia Chapman
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2000
Fax: (215) 994-2222
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

*Counsel for Defendant*
  *Lannett Company, Inc.*

/s/ John M. Taladay
John M. Taladay
Erik T. Koons
Stacy L. Turner
Christopher P. Wilson
BAKER BOTTS LLP
1299 Pennsylvania Avenue NW
Washington, DC 20004-2400
Tel: (202) 639-7700
Fax: (202) 639-7890
john.taladay@bakerbotts.com
erik.koons@bakerbotts.com
stacy.turner@bakerbotts.com
christopher.wilson@bakerbotts.com

Lauri A. Kavulich
Ann E. Lemmo
CLARK HILL PLC
2005 Market St, Suite 1000
Philadelphia, PA 19103
Tel: (215) 640-8500
Fax: (215) 640-8501
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
CLARK HILL PLC
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Tel: (412) 394-7711
Fax: (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendant Sun
  Pharmaceutical Industries, Inc.*

/s/ Robert J. Cleary
Robert J. Cleary
Dietrich L. Snell
David A. Munkittrick
Edward Canter
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel: (212) 969-3000
rjcleary@proskauer.com
dsnell@proskauer.com
dmunkittrick@proskauer.com
ecanter@proskauer.com

*Counsel for Defendant Rajiv Malik*

*/s/ Michael Martinez*
Michael E. Martinez
Steven M. Kowal
Lauren N. Donahue
Brian J. Smith
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-8000
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Defendant Mayne Pharma
   Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on this 6th day of September 2019, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

<u>*/s/ Benjamin F. Holt*</u>
Benjamin F. Holt